MELVIN, et al. *v.* STATE.

Division A. Nov. 27, 1950.

No. 37611 (48 So. (2d) 856)

Jan. 15, 1951 (49 So. (2d) 837)

Melvin & Melvin, for appellants.

**W. W. Pierce,** also for appellants.

136

**George H. Ethridge,** Assistant Attorney General, for appellee.

138

### Ethridge, C.

This case requires the application of old and well established principles of the law of constructive contempt of court to an unusual statute and factual situation. The appellants were adjudged by the Chancery Court of Rankin County of constructive or indirect contempt of that court and sentenced to thirty days each in the county jail, and the court imposed a fine of $250.00 on L. G. Melvin and of $100.00 on K. Wayne Melvin.

In 1946 a group of citizens of Rankin County, Mississippi, organized an informal association known as the Rankin County Christian Citizens' League. The purpose of that organization was to undertake to eliminate numerous alleged illegal establishments selling intoxicating liquors in that County, and in other respects to participate as citizens in eliminating undesirable conditions which might affect the morals of that community. In December, 1947, the appellant, L. G. Melvin, was elected chairman of the Christian Citizens' League and in that capacity chairman of the Executive Committee of the League. Some time in the early part of 1948 L. G. Melvin and other members of the Executive Committee went to a firm of lawyers in Meridian, Lauderdale County, Mississippi, and discussed with them the filing of some so-called padlock proceedings against illegally operated whiskey stores in Rankin County. The attorneys advised them that they would have to obtain some evidence by the purchase of intoxicating liquors from the establishments sought to be closed before such proceedings could be filed. They also advised the Executive Committee that the League should appoint one man as its representative to deal with the attorneys in the filing and handling of such suits. L. G. Melvin, the chairman, was designated as the League's representative for that purpose. However, nothing was said in the authorization about L. G. Melvin having the power to settle or compromise the suits out of court.

Appellant K. Wayne Melvin, who was not a member of the League, and is a brother of appellant, L. G. Melvin, at the request of his brother proceeded to purchase whiskey from six different places in Rankin County. He then turned this evidence over to L. G. Melvin.

In accordance with the plan of the League, six suits were filed in the Chancery Court of Rankin County on September 1, 1948 against various defendants. One of the defendants in one of the suits was Guysell McPhail. The bills were filed under the authority of Sections 2639 and 2640 of the Mississippi Code of 1942. Section 2639 provides that any person who sells or allows to be sold at his place of business intoxicating liquors is subject to pay to the state and the county where the offense is committed the sum of $500.00 for the county and $500.00 for the state. The state or county or any taxpayer thereof may bring said suit in the name of the state or county. Section 2640 gives the chancery court concurrent jurisdiction with courts of law under Section 2639 in suits brought by the state, county, or by any taxpayer in the name of the state or county. In addition, it gives the chancery court power to suppress as a nuisance any place of business where Section 2639 is violated and by proper judgments and orders to punish and restrain the violators. These Statutes were first passed as Chapter 134 of the Mississippi Laws of 1910, and there has been a considerable amount of litigation involving their application.

All of the bills of complaint which were filed on September 1, 1948, were filed in the name of L. G. Melvin as complainant and as a taxpayer. They recited that he brought these six suits in the name of Rankin County and of the State of Mississippi "for the use and benefit of Rankin County, Mississippi, and the State of Mississippi. . . ." The bills charged the several defendants with selling or permitting to be sold intoxicating liquors on their premises, and requested a temporary injunction against the operation of the stated place of business owned or operated by the defendant, a final injunction,

and a judgment against the defendants in "the sum of $500.00 thereof for the use and benefit of Rankin County, Mississippi, and the sum of $500.00 thereof for the use and benefit of the State of Mississippi. . . ." A temporary injunction was granted in each of these cases, but it was dissolved on September 30, 1948. In the meantime, on or about September 25, 1948, special demurrers and answers to the bills were filed by the defendants denying the allegations of the bills. This was the status of these six suits at the time the events took place which are the subject of this appeal. They were all pending for trial.

Several days before Christmas Eve, December 24, 1948, K. Wayne Melvin called Guy McPhail, one of the defendants in these suits, and arranged an appointment with him. The said appellant advised McPhail that his brother, L. G. Melvin, had spent quite a bit of time and money on these six suits already, and that the League seemed not to be interested in them. He further said that L. G. Melvin in fact was going to have to give up his home, but that if McPhail and the other defendants in these suits could get up enough money to settle them, he, L. G. Melvin, would withdraw the cases. K. Wayne Melvin then asked McPhail if he would contact the other defendants in the six cases with reference to settling them, and if he would then meet with him and L. G. Melvin and discuss a settlement, to which McPhail agreed. The meeting was scheduled for 5 o'clock on the afternoon of December 24, 1948, at Room 525 of the Heidelberg Hotel in Jackson. Prior to the meeting, McPhail had employed a private detective to place a microphone under a pillow in the room where the meeting would be held, and to run a wire to the room immediately below, No. 425, in which the detective had a loudspeaker and a wire recorder. Present in the room in which the recorder was located was the detective and the Sheriff of Rankin County, along with two other men. At the appointed time the appellants met McPhail in Room 525. The re-

cording device was operating during the entire conversation, as was the loudspeaker over which the occupants in Room 425 could hear the conversation.

The talk extended over a period of about an hour, and during that time L. G. Melvin made the proposition to McPhail that if McPhail and the defendants in the five other suits would pay him, L. G. Melvin, $1,000.00 a suit or the total sum of $6,000.00, he would destroy the evidence and drop the suits. As the chancellor pointed out, L. G. Melvin does not deny that the proposition was made, but in fact admitted it. The other appellant, K. Wayne Melvin, participated in the conversation with McPhail, but it appears that L. G. Melvin advanced the proposition itself. McPhail testified that L. G. Melvin told him that he had a relative who was a lawyer and that he thought he could arrange through him for the dismissal of the suits. L. G. Melvin also admitted this. He also admitted that he advised McPhail during this conference that he had spent a lot of time and money on these suits, that he was tired of them and would settle them for $6,000.00. McPhail further testified that L. G. Melvin said that if he could not dismiss the suits in any other way he would get so mixed up on the witness stand that his testimony would be of no value. L. G. Melvin denied that he made this statement. At this point there is very little conflict in the testimony. However, L. G. Melvin, as well as K. Wayne Melvin, stated that his intention was to settle the suits and turn the money over to the state and county.

L. G. Melvin testified that his lawyers had told him that they had settled some of the suits in Lauderdale County. This was confirmed by the attorney, but he had not discussed any settlement of the six suits in Rankin County with appellants, and the first the attorney heard of any proposed settlement of these suits was about two months after the appellants' conversation of December 24th with McPhail. The evidence in these cases, consisting of several bottles of whiskey, was stored in the

office of L. G. Melvin in Jackson, and on February 28, 1949, the building where it was located was destroyed by fire, also destroying the evidence. However, we do not think that this affects this case, inasmuch as the offense, if any, had been committed on December 24, 1948.

At the February, 1949, term of court the chancellor by order appointed three attorneys practicing before the court to make an investigation of charges against the appellants of constructive contempt of the court, and directed these attorneys to prepare an information accordingly. This was done, and the charges and information against appellants were tried at the September, 1949, term, at the end of which the chancellor adjudged appellants guilty of constructive contempt of the court, and sentenced them as stated at the beginning of this opinion.

The information charged that the appellants, while these six suits were pending, "did wilfully, unlawfully, and corruptly enter into a conspiracy to obtain certain moneys from the defendants in said causes in return for a destruction of the evidence upon which said causes of action were predicated, and a dismissal of said causes of action which were then pending in this said court." It charged further that the offer to destroy the evidence and to dismiss the causes was based upon payment to appellant of $6,000.00 "for his own personal use and to defraud the State of Mississippi and Rankin County, Mississippi", and that these acts constituted contempt of the court.

The chancellor in his decree found that appellants did not make the offer to McPhail in good faith, but that beyond a reasonable doubt from the evidence appellants intended to destroy the evidence and appropriate the money for their own personal use; that K. Wayne Melvin had participated actively in the negotiations and offer, and was also guilty of conduct tending to embarrass, hinder, and obstruct the administration of justice.

Appellants attack their convictions of contempt of court on five major grounds. █ They first assert

that they were doing what they and any other litigant have a right to do, settle or compromise their cases out of court, and without a trial. But this right exists only as to litigants in private controversies between private individuals. Code Sections 2639 and 2640 create a right in a taxpayer to sue in the capacity of a fiduciary or trustee for the benefit of the county and state. The statute expressly provides for this, and the bills in the six suits stated that L. G. Melvin was suing for the use and benefit of the county and state. Money obtained by a taxpayer in a suit under these statutes belongs to the state and county. He sues and recovers as trustee for them. He has no individual right to the funds. Hence one who as a complainant in such an action wrongfully conspires and offers to destroy or who destroys the evidence therein, and to enrich himself at the expense of the state and county, and to dismiss the suits upon the payment of money to him for his own personal use and to defraud the state and county is obstructing the administration of justice in the court in which this type of case is pending.

It is more than a private wrong and a common crime. It is a wrongful attempt even if the plan is not consummated to impede, embarrass, obstruct, defeat, and corrupt the administration of justice in which the action is pending. It is a major affront to the responsibilities and powers of the court, and is in contempt of that court and punishable accordingly. See Dangel, Contempt, page 103 (1939).

 The charges based upon the information filed by the attorneys were properly made. Appellants say that the court had no authority to appoint the three attorneys to prepare and execute the information, this unprecedented action was improper, and that the court should have called upon the district attorney to file the charges. However, attorneys are officers of the court and take a solemn oath to uphold the administration of justice. Mississippi Code of 1942, Section 8664; Ex parte

Redmond, 120 Miss. 536, 82 So. 513. We see no reason why the court should be denied the power to call upon its own officers to assist it. Otherwise, the judge himself would have to get out and make the investigation. In Grace v. State, 1915, 108 Miss. 767, 67 So. 212, the Court recognized the fact that the court might proceed against a party of its own motion. To the same effect is Dangel, Contempt, page 119; People v. Gard, 1913, 259 Ill. 238, 102 N. E. 255, writ of error dismissed, 235 U. S. 691, 35 S. Ct. 206, 59 L. Ed. 428; McCann v. New York Stock Exchange, 2 Cir., 1935, 80 F. (2d) 211, certiorari denied, McCann v. Leibell, 299 U. S. 603, 57 S. Ct. 233, 81 L. Ed. 444.

The information clearly shows that it was drawn and filed in the name of the state against appellants. A somewhat similar information was sustained by the Court in Prine v. State, 1926, 143 Miss. 231, 108 So. 716. Appellants also say that the information was erroneous because it was sworn to only on information and belief. Since attorneys are officers of the court, it would seem that their official oaths would suffice, even in the absence of an affidavit. Prine v. State, supra. Moreover, it would be unreasonable to expect the attorneys filing the charge to have personal knowledge of the events. It is a very unusual situation when the district or county attorney has any personal knowledge of the facts upon which his affidavit is made.

Appellants also say that the court's power to punish for contempt of court is defined and limited by Code Section 1656, and that therefore the court's power does not extend to a contempt while the court is not sitting. However, we think that Section 1656 defines the extent of the punishment only while the court is sitting, but that it does not exclude the power to punish for contempt while the court is not sitting. It is almost universally held that the judicial power to punish for contempt is inherent and implied in the judicial function. Mississippi Constitution of 1890, Sections 159, 160, 161;

Ex parte Adams, 1853, 25 Miss. 883; Watson v. Williams, 1853, 36 Miss. 331; 17 C. J. S., Contempt, § 43, pp. 55-60.

■■ Appellants claim that the decree was against the overwhelming weight of the evidence. The chancellor properly held that he must find appellants guilty beyond a reasonable doubt. Dangel, Contempt, page 76. And of course this Court has always examined carefully contempt convictions. See Brannon v. State, 202 Miss. 571, 29 So. (2d) 916. However, we think that the trial judge was amply justified in finding as he did on the facts.

The testimony is in agreement as to the proposition made by appellants to McPhail, except as to who would get the money. The record shows that L. G. Melvin stated that he had spent a lot of his own money and time on these cases and might have to give up his home. When L. G. Melvin was asked by McPhail what the court might do about dismissing the suits, he indicated that he had an uncle who was a lawyer who could arrange for the dismissal. He agreed to destroy the evidence. McPhail testified that L. G. Melvin said that if he could not handle it in any other way he would destroy the evidence or he would get mixed up on the witness stand. Furthermore, all of the preliminaries to and the offer to McPhail and the other defendants were done in a surreptitious manner. The chancellor heard all of the testimony and we cannot say that he was not justified from these and other facts in finding as he did.

The court did not err in the amount of the fine and imprisonment. Code Section 1656 does not apply to the scope of punishment for contempts occurring while the court is not sitting. (The applicable statute under these circumstances is Code Section 2562 applying to "offenses for which a penalty is not provided elsewhere by statute) . . .." ■■ Nor did the court err in admitting the court records in the six cases which were pending at the time of the contempt. Those records were essential elements of the charges here, and were relevant to them.

██ ██ Because of the lack of clarity of the wire recording, the court correctly excluded it from the evidence. However, the sheriff's testimony as to what he heard over the loudspeaker was relevant and proper. It is analogous to a witness testifying to what he heard over the telephone.

We therefore conclude that the decree of the chancellor and the convictions of appellants should be affirmed.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.

**Kyle, J.,** took no part in the consideration or decision of this case.

ON SUGGESTION OF ERROR

**Lee, J.**

Careful consideration has been given to the several points assigned and argued in the Suggestion of Error. Inasmuch as these questions were fully dealt with in the original opinion, further response thereto is deemed unnecessary. Since we adhere to the views heretofore expressed in the affirmance of this cause, it follows that the Suggestion of Error should be, and is, overruled.

In responding to the assignment of error which contended that the lower court had imposed excessive punishments, in the original opinion, in the paragraph next preceding the last, it was said: "The applicable statute under these circumstances is Code Section 2562 applying to 'offenses for which a penalty is not provided elsewhere by statute' ". [48 So. (2d) 856, 861.]

██ ██ Since the power exercised by the lower court in the prosecution and sentence for this constructive con-

tempt was derived from the inherent powers of such court, Section 2562, Code of 1942, has no application, and reference to that section was untimely. To that end, the effect of the above quoted excerpt is eliminated from the opinion.

Suggestion of error overruled.