## Ballew *v.* Case, Admrx., Etc.

No. 40584          November 25, 1957          98 So. 2d 451

*Phillips & Wiltshire,* McComb, for appellant.

*B. D. Statham,* Magnolia, for appelle.

HALL, J.

Mrs. Mollie T. Ballew lived alone just outside the corporate limits of Magnolia. She was found dead on March 21, 1956, apparently having expired of a heart attack about two days earlier. She died intestate and

left surviving as her sole and only heirs at law the appellant James E. Ballew, a resident citizen of McComb, Mississippi, Ellis Ballew, a resident citizen of Kevil, Kentucky, Mrs. Mildred B. Case, a resident of Magnolia, and Mrs. Mary B. Purtle, presently a resident of New Orleans, Louisiana, all of whom are children of the deceased. On July 24, 1956, Mrs. Mildred B. Case was appointed administratrix of deceased's estate. And after the appointment she moved in the house theretofore occupied by the deceased. This was apparently under some authority of the court as reflected by the record but the decree so authorizing is very vague and indefinite.

The administratrix, just after the middle of August, went on a trip to the Gulf Coast to visit her daughter and grandchildren. On August 17th the appellant herein filed an affidavit in replevin in the County Court of Pike County, as agent for his wife Mrs. Dorothy Boyd Ballew, seeking to recover from the administratrix in her individual capacity a washing machine, a gas range, a utility cabinet, a five piece breakfast room set, a 1953 model Frigidaire refrigerator, a maroon couch, a table stool, and an oscillating fan. On the same day as agent for Sansing-Ballew Pontiac Company, the appellant filed an affidavit in replevin in the County Court against the administratrix individually seeking to recover one 1939 Model Pontiac automobile. Writs of replevin were issued on these two affidavits and were carried by the appellant to the sheriff's office and two deputies went with the appellant to execute the two writs of replevin. When they reached the house Mrs. Case was absent and the house was locked and the appellant produced a key to the house and the house was thereupon unlocked and the personal property above mentioned was removed from the house and placed on a truck which the appellant provided and was hauled away from the house. One of the deputies accompanied the appellant and two Ne-

groes whom he had provided to handle the household furniture above mentioned, and the appellant carried the deputy to the courthouse. The deputy gave no instructions as to where the property should be placed and appellant thereupon carried it to his home in McComb. Upon the return of Mrs. Case she filed a petition for citation for contempt against the appellant, charging that the household goods above mentioned were taken by the appellant without legal right or authority after he had broken into and entered the said house and had forcibly taken the said items of personal property therefrom. The petition also charged that the appellant without any legal right or authority had entered upon the premises and removed therefrom the Pontiac automobile, and it charged that he is interfering with, molesting and preventing a lawful and legal administration of the estate of Mrs. Mollie T. Ballew, and that he is guilty of breaking and entering the property under the control and supervision of Mrs. Case and of carrying the same away, for which reason the petition says that the appellant was guilty of contempt of court. No mention was made in the petition of the writs of replevin but the record shows without dispute that a copy of each writ was nailed upon the door of the house in question.

The appellant answered and admitted that he took the said items from the house but denied that the taking was without legal right or authority, and denied that he broke into the said house, and denied that said property was forcibly taken. He also admitted that he took possession of the Pontiac antomobile but denied that this taking was without any legal right or authority. The answer denied that appellant had been guilty of interfering with or molesting or preventing a lawful and legal administration of the estate, and denied that the said property was under the control of the administratrix of the estate and pointed out the fact to be that the said writs were obtained against Mrs. Case individually, and that everything taken

was under authority of a writ of replevin. The answer averred that appellant has much respect for the Chancery Court of Pike County, its officers and the orders of the court, and that he did not in any way violate or intentionally interfere with an order or intentionally prevent the legal administration of the estate. The answer further averred that none of the property consisted of effects of the estate of Mollie T. Ballew.

At the conclusion of all of the testimony the Chancellor rendered an option in which he held that by taking out the two writs of replevin the appellant was guilty of contempt of court, and the court sentenced him to pay a fine of $100 and to serve 30 days in jail, and held that his sole right to make any claim to the property in question would be to come into chancery court to establish his right. The proof establishes beyond question that as soon as the petition for citation for contempt was filed the appellant returned the property and this occurred before the hearing on the petition.

Before stating the facts shown by the evidence we think it is well to call attention to Section 1152 of the Recompiled Code of 1942, one portion of which is that any person convicted of a contempt by any court except the Supreme Court may appeal to the Supreme Court "and on such appeal the question shall be whether the appellant was guilty of contempt; and the sentence or decrees or order of the court below may be affirmed, reversed, annulled, or modified, *according to the judgment of the appellate court.*"

In the case of Brannon v. State, 202 Miss. 571, 584, 29 So. 2d 916, we called attention to this statute and pointed out that the Supreme Court has a right to decide from the record whether the appellant was actually guilty of contempt. In a case of this kind we are not held to the rule that we will not reverse unless the chancellor is manifestly wrong, but we are empowered to review the case and decide for ourselves whether there had

been an actual contempt of court. Bearing this in mind we shall briefly review the testimony.

Mrs. Mildred B. Case testified as to the description of the property which was moved and also testified that on her return home she found the notices on the front door. The chancery clerk testified and identified and introduced the entire administration file and said that no list of the property was given in the file. On this proof the petitioner rested.

Mr. James Ballew testified that the property described in the replevin affidavit as to the household goods, was the property of his wife and that it was bought and paid for with her money and was merely loaned to his mother to be used by her until her death. As to the Pontiac automobile he testified that it was the property of Sansing-Ballew Pontiac Company and that it was still carried on the books of the company as the property of the company and that he bought the license tag for the car in his mother's name, but that the Sansing-Ballew Pontiac Company carried and paid for the insurance on the automobile. He also testified that he built and paid for the house in question in 1943 and had paid his mother's bills in the last few years, including hospital bills.

Mrs. Dorothy Ballew, the wife of James, testified that she bought the household personal property in question with her own money and merely let James' mother use it with the understanding that at her death she, Mrs. Dorothy Ballew, would get the property back and that she never sold or gave it to Mrs. Mollie Ballew. She also testified, as did her husband, that as soon as her husband learned of any dissatisfaction over his taking the property by replevin that he returned it as soon as he could. She also said that he filed the replevin suit because she insisted on his doing it, and that he had tried to follow the orders of the court.

Ellis Ballew, one of the heirs, testified that all of the personal property in question belonged to James or his

wife and that his mother never owned it. He said that James built the house in question and that he, Ellis Ballew, did not own anything down there and did not want anything and was not entitled to anything.

Mrs. Mamie Pigott, apparently an aunt of the heirs, testified that she lived near the deceased and visited her frequently and that the deceased told her many times that the property in question belonged to James and his wife and that they let his mother use it and that at her death it belonged to them. She also testified that the deceased told her that James paid her bills, including doctor's bills, drug bills, gas and telephone bills, and that James was letting her use the car and that James built the house and it was supposed to go to him at her death.

Herbert Bearden, introduced by the petitioner out of regular order, was one of the deputies who served the writs and he said that nobody was home when they arrived there and he went back to Magnolia and got advice as to how to serve the writ and was told to tack it on the door. He said that the house was unlocked with a key which Ballew got from his aunt who lived nearby, and that he and the other deputy stayed in the yard while James and the two Negroes went in the house and brought the things out and loaded them on the truck. He said that he did not tell James to get the things or not to get them. He said that James was interested in complying with the orders of the court and said that he wanted to go by the law and that he, the deputy, thought that he was going by the law.

Mrs. Mildred B. Case was reintroduced and testified that she stayed a lot with her mother and that as far as she knew her mother owned everything down there but that she had no papers to show that her mother owned it.

Jack Hamilton testified that he knew Mrs. Ballew well and visited her frequently and also carried food to her, and that the deceased told him that it was mighty nice

of James and Dorothy letting her keep the things until her death.

Mrs. Mary B. Purtle testified that James and his wife sent the property to her mother to use as long as she lived and that James paid her medical and hospital bills and any other bills that her mother could not pay.

As we have already stated, the chancellor held not only that the appellant was guilty of contempt beyond every reasonable doubt but also held that the filing of the replevin suits constituted contempt. In the case of Boyle v. Knauss, 81 N. J. L. 330, 79 A. 1025, the Supreme Court of New Jersey said:

"This is an action of replevin for diamonds, judgment being rendered for the plaintiff, who was the assignee of one Mabel Austin, whose title to the diamonds was admitted. It appeared that Austin had loaned them to Brown, the defendant's intestate, in his lifetime, with permission to wear them until she should ask for their return. She did not request their return during Brown's lifetime. Upon Brown's death, the diamonds were found among his effects, were taken possession of by the defendant, as his administrator, who afterward inventoried them, as assets of the decedent's estate. The title was assigned by a bill of sale, made by Austin to the plaintiff, after Brown's death. * * *

"One of the reasons assigned for reversal of the judgment is that an action of replevin may not be maintained against a defendant in his representative capacity. * * *

"We conclude, therefore, that when goods are unlawfully detained by an administrator, who has come into possession of them from his intestate, in due course of administration, and claims title to them in the right of his intestate, a person seeking by replevin to recover them has his choice of action against the detainer personally, or of suing him in his representative capacity. There was no error therefore in the action of the court below in retaining the case."

In the case of Hildreth v. Raffin, 125 N. Y. S., 695, 141 App. Div. 77, the Supreme Court of New York held, quoting from the syllabi: ''Where an administrator assumes dominion over chattels loaned to his intestate and refuses to restore them, an action in replevin may be brought against him individually. This, because the unlawful detention is his individual act, not that of his intestate.''

In the case of Silsby v. Wickersham, 171 Mo. App. 128, 155 S. W. 1094, the Court of Appeals of Missouri held, quoting from the syllabi: ''Where property, not belonging to the estate, is taken possession of and held in good faith by the administrator as property of the estate, replevin lies by the owner against the administrator in his official capacity.''

In the case of Hill v. Escort, 38 Tex. Civil Appeals 487, 86 S. W. 367, the Court held: ''Where an administrator obtains and converts property belonging to another under the belief that it belongs to the estate of his intestate, he is liable, in his representative as well as in his individual capacity, to the owner, for the value of the property; and, when sued in his representative capacity, the sureties are liable on his official bond, if his liability is established. Schmidt v. Jacques (Tex. Civ. App.) 62 S. W. 956; Clapp v. Walters, 2 Tex. 130.''

See also the case of Service Transport Co. v. Matyas, 159 Ohio St. 300, 112 N. E. 2d 20, 42 A. L. R. 2d 413, and the lengthy annotation in 42 A. L. R. 2d beginning at page 418 where authorities from all over the country are cited in support of the proposition that replevin is available under the facts of this case.

We conclude from a consideration of the entire record and in view of the above authorities that the appellant was not guilty of contempt in filing the replevin suits and furthermore we conclude that there is no basis whatsoever for an adjudication that the appellant is in contempt. The decree of the lower court will therefore be

reversed and judgment here entered for the appellant.

Reversed and judgment here.

*Roberds, P. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.