EVERS *v.* STATE

No. 41960 June 12, 1961 131 So. 2d 653

*Jack H. Young,* Jackson; *R. Jess Brown,* Vicksburg; *Robert L. Carter,* New York City, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

The appellant, Medgar Evers, was convicted of constructive contempt of court, by publishing a statement criticizing a conviction of another for burglary, after the jury's verdict and sentence had been rendered. We hold the State's evidence wholly failed to show beyond a rea-

sonable doubt that the publication had a reasonable and substantial tendency to corrupt or hinder the administration of justice in the courts. Hence the conviction is reversed and appellant is discharged.

The regular term of the Circuit Court of Forrest County began on November 14, 1960. On November 21 Clyde Kennard, a Negro, was tried before a jury on an indictment charging him with burglary. He was convicted and given a sentence of seven years in the state penitentiary. The conviction was affirmed by this Court. Clyde Kennard v. State, 128 So. 2d 572 (Miss. 1961).

On November 25, 1960, during the same term, the district attorney filed a petition for constructive contempt of court. It alleged that Evers was present in court during the Kennard trial, and heard and observed the entire proceedings. On Tuesday, November 22, Evers, who is Field Secretary for the National Association for the Advancement of Colored People of the State of Mississippi, caused to be placed in a newspaper a statement, printed in the Hattiesburg "American", dealing with the Kennard trial, in which Evers said:

"The greatest mockery (to judicial) justice took place Monday, Nov. 21 in the Forrest County courthouse when despite the overwhelming evidence in Clyde Kennard's favor, he was convicted and sentenced to seven years in the state penitentiary for alleged burglary.

"In a court room of segregationists apparently resolved to put Kennard 'legally away', the all-white jury found Kennard guilty as charged in only 10 minutes."

The petition charged that this was done with the intent "contumaciously to impede, degrade, obstruct, embarass, interrupt, defeat or corrupt the administration of justice" in the Circuit Court of Forrest County, "said statement being an expression of contempt for this honorable court;" and Evers should be cited to appear and

show cause why he should not be adjudged guilty of constructive contempt of court. The circuit court issued a fiat thereon, and there was a hearing on December 2. Evers moved to dismiss the petition, alleging that it failed to state a case of contempt of court, defendant merely expressed an honest opinion of a particular case, the petition did not charge interference with the conduct of the trial of Kennard or any other person, and defendant's comments were protected free speech, and their publication an exercise of the right of freedom of the press, both protected by the due process clause of the 14th Amendment, U. S. Constitution.

Three witnesses testified for the State, none for the defendant. Douglas Starr is a news reporter for the Associated Press. The Hattiesburg "American" is a subscriber to the AP service. Starr had known Evers about five years. On November 22, 1960, Evers telephoned him in Jackson. It was an unsolicited call from Evers to him. The witness read an article from the Hattiesburg "American", and stated it contained a verbatim quote of what Evers said to him. Thereafter, Starr placed the story on the teletype to the New Orleans Bureau of AP, from which it was sent to the Hattiesburg paper along with other AP outlets, including television and radio stations.

Ed Jenkins, manager of a Hattiesburg radio station, knew Evers by sight, and testified that he was present in the courtroom during the Kennard trial, hearing and seeing everything that happened. Jack H. Young, an attorney of Jackson who was defense counsel for Kennard, admitted that, after Kennard's trial, he expressed to the court and jury his appreciation for the fair, courteous and impartial manner in which he had been received and treated, and for the similar treatment accorded his client. Defendant's motion for a directed verdict was overruled.

The judgment recited that the Kennard case was the first criminal case tried during the November 1960 term. Kennard's co-indictee, Roberts, had entered a plea of guilty, and had not been sentenced when the statement was published. Evers was present during the Kennard trial and Kennard's counsel expressed his appreciation of the fair trial given his client. Evers was aware of these circumstances, "but regardless thereof, said Medgar Evers expressed contempt for said Court and the officers thereof in the issuance of said contemptuous statement to the Associated Press.

"That the conduct on the part of the defendant, Medgar Evers, was contemptuous and a conscious effort to embarrass, impede, degrade, obstruct, interrupt, defeat and corrupt the administration of justice and therefore he is in contempt of this Court." Hence the court sentenced defendant to pay a fine of $100 and to serve 30 days in the county jail.

I.

In considering this case, certain basic principles must be kept in mind. Appellant was convicted of constructive contempt of court. That is defined as any act calculated to impede, embarrass, obstruct, defeat or corrupt the administration of courts of justice, when the act is done beyond the presence of the court. Sullens v. State, 191 Miss. 856, 869, 4 So. 2d 356 (1941). This is a criminal charge, which the State must prove beyond a reasonable doubt. 12 Am. Jur., Contempt, Sec. 75; Brannon v. State, 202 Miss. 571, 583, 29 So. 2d 916 (1947).

Further, in determining whether the evidence is sufficient to support a conviction, Miss. Code 1942, Rec., Sec. 1152, provides for an independent determination by this Court of that issue. Section 1152 deals with appeals from judgments for contempt, and, after making certain provisions for procedure and bond, it states: "and on such appeal the question shall be whether the

appellant was guilty of contempt; and the sentence or decree or order of the court below may be affirmed, reversed, annulled, or modified, according to the judgment of the appellate court.'' Brannon v. State, 202 Miss. at 584, held that this statute ''directs that we shall decide if there was contempt''. *Brannon* was followed in Ballew v. Case, 232 Miss. 183, 187, 98 So. 2d 451 (1957), in which it was observed that ''the Supreme Court has a right to decide from the record whether the appellant was actually guilty of contempt.'' We are not held to the rule that we will not reverse unless the chancellor is manifestly wrong, ''but we are empowered to review the case and decide for ourselves whether there had been an actual contempt of court.''

A contempt charge must also be considered in the light of basic constitutional guaranties. Miss. Constitution, Sec. 13, states: ''The freedom of speech and of the press shall be held sacred; . . .'' U. S. Constitution, First Amendment, provides: ''Congress shall make no law . . . abridging the freedom of speech, or of the press; . . .'' The 14th Amendment applied this as a limitation upon state power.

■■ ■ The general statute referring to contempt of court, Miss. Code 1942, Rec., Sec. 1656, states that the courts of record shall have power to fine and imprison any person guilty of contempt of the court while sitting. There appears to be no specific statute on constructive contempt of court. In Melvin v. State, 210 Miss. 132, 145, 48 So. 2d 856 (1950), it was held that, while Sec. 1656 refers only to direct contempt, it does not exclude the power to punish for constructive contempt. This power is inherent and implied in the judicial function. It was said: ''This Court has always examined carefully contempt convictions.''

## II.

The statement for which appellant was convicted was made by him as Field Secretary for the NAACP of Mis-

sissippi and as an individual. The jury had previously rendered its verdict and the court had sentenced defendant. The State does not deny the statement in appellant's brief that the court had overruled his motion for a new trial, although the record in Kennard v. State does not reflect any such order. The jury and the court had already decided the case. Appellant made the statement on his own volition to a press service reporter, and it was thereafter put on the wire service and distributed to its subscribers, including the Hattiesburg newspaper.

The statement was intemperate and false in several respects. It correctly said that Kennard was convicted and sentenced to seven years in the penitentiary for burglary. It was false in its statement that this conviction was "despite the overwhelming evidence in Clyde Kennard's favor." This Court held that it was amply supported by the evidence. Kennard v. State, 128 So. 2d 572. The statement was false in saying this was "The greatest mockery (to judicial) justice . . ." We have held the conviction was supported by substantial evidence. The statement refers to "an all-white jury." This is correct in that the particular jury which tried this case was composed of white persons. However, the evidence in *Kennard* showed there had been no systematic exclusion of Negroes from juries in Forrest County. The *Kennard* opinion discussed this issue in some detail. The statement was false in saying that the jury was "in a courtroom of segregationists apparently resolved to put Kennard 'legally away'." The record in the Kennard case and here reflects that Kennard was given a fair trial, as his own counsel admitted.

■■ However, we do not think that these intemperate and partly false remarks made and published by appellant after the case was decided had any reasonable tendency to impede, embarrass, obstruct, defeat or corrupt the administration of the court. They were simply unwarranted criticism of the court and jury in a case al-

ready decided. The State had the burden of proof of showing that appellant's remarks would have a reasonably real and substantial basis and tendency to impede the administration of justice. There is simply no evidence in the record to show they would do this, and certainly not sufficient evidence to reach the standard of beyond a reasonable doubt. Knox v. State, 160 Miss. 494, 501-502, 135 So. 206 (1931). The general rule in this respect is summarized in Dangel, Contempt (1939), Sec. 357:

"The courts are subject to the same criticism as other people when a case is finished. Unjustifiable criticism of the conduct of the court is not contempt, where the matter has been fully disposed of before the criticism is published. Comments, however stringent, relating to judicial proceedings which are past and ended, are not contempt of court but they may be a libel against the judge or some other officer of the court.

"Publications regarding a matter which has been finally adjudicated so that carrying out of the court's judgment cannot be obstructed are not contempt and cannot be summarily punished unless the publications obstruct, impede, interfere with, or embarrass the court in the administration of justice in future stages of that case."

The early English common-law rule was that publication of an incorrect or inaccurate report of a decision of the court, or proceeding therein, which tended to bring the court into ridicule or disrespect constituted contempt. 12 Am. Jur., Contempt, Sec. 33; Anno., 17 L. R. A. (N.S.) 583 (1909). However, the general rule in this country, particularly in the light of our constitutional protections of freedom of speech and the press, is that a citizen or newspaper publisher "is not liable for contempt of court for publishing an inaccurate report of a court decision after the final disposition of the case."

The reason and policy for this attitude are well stated in 12 Am. Jur., Contempt, Sec. 36, as follows: "At common law the mere writing contemptuously of the judge of a superior court is a constructive contempt, but this doctrine has not been fully adopted in this country and has been limited to pending cases by our constitutional guaranties of free speech and liberty of the press. The common-law rule is founded upon the principle that a judge is the representative of the King and, hence, beyond question. In this country, however, the principles of free and popular government are diametrically opposed to such a theory. The utmost latitude and liberty in the discussion of business affecting the public and the conduct of those who fill positions of public trust that is consistent with truth and decency is not only permitted, but is held to be essential to the public welfare. Hence, under our laws, defamatory comments on the past conduct of a judge or relating to his fairness or honesty do not constitute a contempt even though they may embarrass the court to some extent in pending litigation." See also 17 C. J. S., Contempt, Sec. 30. The rule of a small minority of states is to the contrary, but the sounder doctrine is that of confining constructive contempts of court to cases which are pending before it at the time of the publication.

Sullens v. State, 191 Miss. 856, 867, 873, 4 So. 2d 356 (1941), mentions in an obiter dictum that constructive contempt is not restricted to a pending case, to so confine it would be to prohibit its application where the evidence shows that the machinery of the court is hampered in the future after the case has been decided. Even if this statement were part of the decision in *Sullens,* contrary to the rule of the great majority of the states, still constructive contempt after decision would extend only to unusual circumstances, where the evidence clearly showed that future operations of the court would be hindered by publication of comments on a past case. The State's

evidence would not support a finding to that effect. The State urges we should assume that the jury in the *Kennard* case, and other juries, and the judge, would probably be influenced and impaired in their functioning in future cases. We cannot engage in such surmise and assumption where the burden of the State to show constructive contempt of court is to prove it beyond a reasonable doubt. Moreover, in *Sullens* one of the two editorials by a newspaper editor was published before and one after adjournment. They were said to be in bad taste and indiscrete; but the evidence did not show they would tend to hinder or corrupt the court and its agencies in their functions, and, in addition, "freedom of speech includes the freedom to speak unwisdom or even heresy. Others may despise the speech but they may not despise the freedom."

### III.

██ Moreover, this record does not support the conviction, even if we assume the publication was made in a case still pending, although verdict and sentence had been rendered, but subject to being reopened by the court before the end of the term. The statement was printed in a newspaper at the end of an article dealing with Kennard's conviction, after verdict and sentence had been pronounced. The State's evidence simply showed that Evers was present at the trial of Kennard, who received a fair trial, and the statement was unsolicited. A trial is a public event, and what transpires in a courtroom is public property. Inaccuracies in reporting are commonplace. A reporter or other member of the audience could not be laid by the heels for contempt simply because he reached and published a prejudiced or inaccurate appraisal of the trial. The person making the publication must have done it under such circumstances as would be reasonably calculated to imperial the fair and orderly functioning of the judicial process. The power to punish for contempt depends upon a more substantial show-

ing than exists here. We cannot see how this one-sided, inaccurate and prejudiced comment on a case could present, in any realistic sense, a serious, real or substantial tendency to impede or corrupt the judge or jury.

In Brannon v. State, 202 Miss. 571, 29 So. 2d 916 (1947), a newspaper editor was convicted of constructive contempt of court by interviewing a witness for the State in a criminal case, during the trial, when the judge had instructed the witnesses not to talk to anyone except their lawyers, and the rule had been invoked. Reversing the conviction, this Court held that there must be ''a real and substantial basis of practical judicial reason, in what material respect the act produces the corrupt effect charged—in what material respect as distinguished from that which is merely technical or else is only illusory.'' As was said in Knox v. State, 160 Miss. 494, 135 So. 206 (1931), we find ourselves unable ''upon the substantial basis mentioned, to point out, under the facts in this case, the requisite corrupt element.'' On the other hand, appellant's publication embraced nothing which in substantial effect would impede justice, or obstruct, defeat, embarrass or corrupt its administration. The word ''embarrass'' in this context does not refer to personal embarrassment of the judge or officer of the court, but to hindering or impeding him. Knox v. State, 160 Miss. at 502.

The State did not sustain its burden of proof. Moreover, the order adjudging defendant in constructive contempt of court did not find that the publication was calculated or would have a real and substantial tendency to impede the administration of the court. Nor was there any evidence to support such an essential conclusion. In order to sustain this conviction, it would be necessary to overrule, in effect, the three leading cases in this state on constructive contempt of court, the *Knox, Sullens* and *Brannon* cases. The State's position is untenable in the light of these precedents.

## IV.

 Lastly, the facts must also be considered in the light of the constitutional guaranties of freedom of speech and of the press. They are not idle and meaningless terms, but signify philosophical concepts of a constitutional republic and of the intellectual independence of every citizen. As was said in *Sullens*, ''The citizen has the constitutional right to be vulgar.'' Our belief in free speech reflects the confidence that truth will prevail in the market place of ideas. Courts are public institutions, which can and should, in many instances, be criticized by citizens. The only restriction on that right is when a person's statements or actions, beyond a reasonable doubt, have a reasonably real and substantial tendency to obstruct the administration of justice. Knox v. State, 160 Miss. at 501-502.

A judge must be a person of reasonable fortitude, and the learned trial judge in this case would assuredly not be affected in his future actions by this publication. Nor do we think any juries would be so affected. Constructive contempt is not an abstraction; it must be reasonably calculated to subvert justice. Measured by these legal and constitutional principles the State failed to show that appellant's published statements would have a reasonable tendency to accomplish that end. See Anno., Freedom of Speech and Press as Limitation on Power to Punish for Contempt, 159 A. L. R. 1379 (1945); Anno., The Supreme Court and the Right of Free Speech and Press, 93 L. Ed. 1151 (1950); 12 Am. Jur., Contempt, Supp., Sec. 49.1. Hence the judgment of the circuit court is reversed and judgment is rendered here discharging appellant.

Reversed and appellant discharged.

All Justices concur.

McGEHEE, C. J., Separate Opinion:

I reluctantly concur in the result reached in this case, but not in the wisdom of quoting some of the legal prin-

ciples from textbooks and the jurisprudence of other states and the making of some of the observations contained in the controlling opinion, which I think would have a tendency to encourage such agitators as Medgar Evers to unjustly criticize our courts at will in the future upon the theory that he has a license from this Court to do so. There sometimes comes a time when the citizen may exercise even a higher right of giving up a right in the interest of the public welfare.

I think that the appellant knew that he could neither impede, degrade, obstruct, interrupt, defeat nor corrupt the administration of justice in the Circuit Court of Forrest County, after the trial of the case to which he was referring had ended, but I think that he intended to show contempt for the court and to embarrass the court as *such* in his published comment as the Field Representative of the organization that he represents.