JENKINS *v.* STATE

No. 42036 January 8, 1962 136 So. 2d 205

628

*B. T. Mitchell,* Tupelo; *Hugh N. Clayton,* New Albany, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

RODGERS, J.

An Information, styled "Petition to Cite for Contempt" was filed by the District Attorney and the County Attorney in the Chancery Court of Lee County, based upon an affidavit of the County Attorney. It was alleged in the Petition that on the 2nd day of December 1960 a temporary injunction was entered enjoining Earnest Jenkins from violating the liquor laws of the State of Mississippi on certain lands described therein, and that at the time said Earnest Jenkins was in contempt of court for having violated said liquor laws on or about December 9, 1960. The petition prayed that defendant be cited for contempt and that the clerk of the court be directed to issue a capias requiring the defendant to be at a place and at a time fixed by the court, and that he be required to give an appearance bond.

The Chancellor signed a fiat in vacation directing the issuance of process requiring defendant to appear before the court. The defendant entered his appearance and moved the court to require the State to make the petition more specific so as to inform the defendant of the nature and cause of the accusation. The court sustained this motion and the petition was amended so as to show that on the 2nd day of December 1960 a temporary injunction was entered wherein it was decreed that Earnest Jenkins and his agents and employees were jointly and severally enjoining from keeping, possessing, and/or selling intoxicating liquors, and that on the 3rd day of December 1960, the writ was duly issued and served upon defendant, prohibiting him and his agents from violating the liquor law on the lands described in the petition. It was further alleged that Earnest Jenkins, his agents and/or employees had violated the terms

of said injunction, and were therefore in contempt of court. It was alleged that the court had adjudicated at a former hearing that Earnest Jenkins owned or controlled the premises described in the petition, and that Earnest Jenkins either sold, or permitted to be sold, to one J. T. Griffin and others a case of beer on December 9, 1960, and one one-half pint of whiskey to Burt Caldwell and Carry Cates on December 16, 1960. The amended petition requested that defendant be adjudged in contempt of court and punished as the court deemed mete and proper. The defendant answered the amended petition and admitted that a decree was "rendered in this cause on December 2, 1960", but denied the charge of having violated the liquor law as described in the petition, and denied the allegation that he had violated the terms of the injunction. The Chancellor heard the testimony introduced, the argument of counsel, and entered a decree finding the defendant guilty of contempt of court for having violated the temporary injunction order, prohibiting him from violating the liquor laws on the lands described. The appellant appealed to this Court and complains that the Chancellor committed error in finding him guilty of criminal constructive contempt; that venue was not proven; that the prosecution failed to prove guilt beyond a reasonable doubt; that his conviction was against the overwhelming weight of the evidence; and that the Chancellor was in error in basing his opinion upon testimony adduced at the hearing when the temporary injunction was issued.

The first four witnesses introduced on behalf of the State testified that one of the witnesses purchased a case of Schlitz beer from a Negro for ten dollars, on the 9th day of December 1960, none of these witnesses knew Earnest Jenkins, and none saw him the night beer was purchased. The witnesses said they did not know who owned the property where the beer was purchased. One witness said "No, sir, as far as him being there, he

wasn't there." None of these witnesses knew the colored man. They did not know his name, whom he was working for, or whether he was working for himself or someone else.

The witnesses Burt Caldwell and Carry Cates testified that on the night of December 23, 1960, they purchased two half pints of whiskey from a Negro "on the hill back of the church, there back over here at Mr. Jenkins' house." On cross-examination, however, it was developed that they went behind two brick buildings to a white house near some woods and they stated that they did not know whether the colored man was selling for himself or not.

The Sheriff of Lee County testified that he took the whiskey from the last two witnesses as they came from Earnest Jenkins' place. He testified that he did not know in which house the defendant Earnest Jenkins lived; and in answer to the question "Do you know anything about the title to that property out there?", he replied "I do not."

Under the ancient common-law rulings, contempt of court was divided into two classes: Direct and consequential. Burdick's Law of Crime, Vol. 1, Sec. 286, p. 417.

██ █ It has been held in recent years that while contempt of court, in its essential character, is divided into various kinds, such as direct and constructive, civil and criminal, still in every species of contempt, whatever may be the ultimate object of redress sought in any individual case, i. e., private compensation or public vindication, there is necessarily inherent an element of offense against the majesty of the law, savoring more or less of criminality. Hence the almost universal doctrine, as laid down by the courts, is that the process by which the party charged is reached and tried, be the adjudication wholly punitive, wholly remedial, or partaking of both qualities, is essentially criminal or quasi-criminal. 1 Encyclopedia, Pleading and Practice, p. 766.

Underhill's Criminal Evidence, 5th Ed., Vol. 3, p. 1831.

In the case of Grace v. State, 108 Miss. 767, 67 So. 212, this Court adopted the rule set out in the case of Ex Parte Wright, 65 Ind. 504, as follows: "A contempt of court is either direct or constructive or, as the latter was anciently called, consequential. A direct contempt is an open insult, in the face of the court, to the person of the judges while presiding, or a resistance to its powers in their presence. A constructive contempt is an act done, not in the presence of the court, but at a distance, which resists their authority, as disobedience to process, or an order of the court, such as tends in its operation to obstruct, interrupt, prevent, or embarrass the administration of justice. For a direct contempt the offender may be punished instantly by arrest and fine or imprisonment, upon no further proof or examination that what is known to the judges by their senses of seeing, hearing, etc.; but, in rendering the judgment and making up the record, the causes of such contempt should be stated. The grounds of a constructive contempt should be stated by affidavit, by the return of some officer, or in some way made known to the court, prima facie, by witnesses or otherwise, so that they may be made a part of the record; and this should be done before a rule or writ is granted against the alleged offender, 4 Bl. Com. 283, 286, 288; Tidd, Practice, 478, 482.''

It was pointed out in the Grace case, supra, quoting from 9 Cyc., p. 41, that: "The rule to show cause should inform defendant of the nature of the contempt alleged." This case also adopted the rule in Stuart v. Reynolds, 204 Fed. 709, 123 C. C. A. 13, in cases of constructive contempt, as follows: "* * * it is proper to adhere substantially to the method of criminal procedure, except in the matter of jury trial, and the attachment or rule should be like an indictment, to the extent of giving the contemnor an opportunity to defend by informing him

concerning the nature and particulars of the offense charged.''

In the case of Brannon v. State, 202 Miss. 571, 29 So. 2d 916, this Court said: '' * * * this charge against appellant was one for constructive contempt and to sustain constructive contempt the law challenges the State to prove it beyond a reasonable doubt and clothes the prisoner with a presumption of innocence until that is done. 'In a proceeding for contempt * * * (the defendant) is entitled to be informed by the petition, motion, or information by which the proceeding was begun of the nature and cause of the accusation, cannot be compelled to testify against himself, and should be presumed innocent until proved guilty beyond a reasonable doubt.''

One of the outstanding Mississippi cases on the question of contempt is the case of Ramsay v. Ramsay, 125 Miss. 715, 88 So. 280, in which it is said: '' 'Proceedings for contempt are of two classes: (1) Those prosecuted to preserve the power and vindicate the dignity of the court, and to punish for disobedience of its orders; and (2) those instituted to preserve and to enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and to administer the remedies to which the court has found them to be entitled.' 13 C. J. 57.

''In the first of these classes the punishment is for a past offense, and when imposed must be suffered in the absence of executive clemency. In the second the contemner 'can end sentence and discharge himself at any moment by doing what he had previously refused to do.' Gompers v. Buck's Stove & R. Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

''The first class (contempt to vindicate the dignity of the court) is quasi criminal, and a defendant therein should be informed of the nature and cause of the accusation (Grace v. State, 108 Miss. 767, 67 South. 212), (and he) cannot be compelled to testify against himself,

and should be presumed innocent until proved guilty beyond a reasonable doubt (Gompers v. Buck's Stove & R. Co., supra.)''

This Court held in the case of State v. Wingo, et al., 221 Miss. 542, 73 So. 2d 107, that contempt proceedings were criminal proceedings and that the State could appeal under Sec. 1153, Miss. Code 1942, Recompiled.

■■ ■ The rules of evidence applicable to criminal cases generally are also applicable to proceedings to punish for contempt. A mere preponderance of evidence is insufficient to convict the accused. Underhill's Criminal Evidence, 5th Ed., Vol. 3, Sec. 814, p. 1836. The proof must establish the guilt of the defendant beyond a reasonable doubt. 1 Encyclopedia, Pleading and Practice, 768; Grace v. State, supra.

In the case of Evers v. State, 241 Miss. 560, 131 So. 2d 653, this Court said: ''In considering this case, certain basic principles must be kept in mind. Appellant was convicted of constructive contempt of court. That is defined as any act calculated to impede, embarrass, obstruct, defeat or corrupt the administration of courts of justice, when the act is done beyond the presence of the court. Sullens v. State, 1941, 191 Miss. 856, 869, 4 So. 2d 356. This is a criminal charge, which the State must prove beyond a reasonable doubt. 12 Am. Jur., Contempt, Sec. 75; Brannon v. State, 1947, 202 Miss. 571, 583, 29 So. 2d 916.''

■■ ■ The affidavit in this case charged that there was an order temporarily enjoining the defendant from violating the liquor law on certain real property. The defendant admitted that there was such an order, but denied that he violated it on the land therein described. It was the duty of the State to prove a violation of the law on the land described in the order. On what land did the alleged violation occur? Was it the land where his residence was located, or where there was a yellow brick house, or where there is a white plank fence, or

where there is a little white house next to the woods? The proof must show beyond a reasonable doubt that the defendant is guilty, and since he is charged with having violated the liquor law on lands described in the Information, the State must prove that he violated the liquor law on that land. There is no direct testimony that whiskey was sold on the land described in the petition. The Sheriff was asked "Do you know anything about the title to that property out there?", and answered "I do not." The charge in the information for contempt, like any other fact, may be proved by circumstantial evidence, but the testimony must establish guilt beyond any reasonable theory of innocence. Underhill's Criminal Evidence, 5th Ed., Vol. 3, p. 1837, Sec. 814; United States v. Clark, 1 Fed. Supp. 747, 61 Fed. 2d 695. In this case the sheriff was asked "Mr. Carter have you seen the deed made in July 1960 where the South 70 feet of this tract where Mr. Jenkins originally owned and sold to Jim Henderson?", and answered "No, sir." Does the fact that the sheriff apprehended some people coming out of a driveway near the home of defendant establish beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis, that the defendant is guilty, because of the circumstances surrounding the arrest of these witnesses? We think not.

 The affidavit for contempt charges that defendant violated the liquor law, and it is obvious from the testimony of all of the witnesses that the defendant did not sell whiskey to any of the witnesses, most of whom never saw the defendant until they saw him in court. The inference sought to be established by the State's testimony is that "the colored man" must have been working for defendant as an agent or employee since he sold whiskey "down back of Mr. Jenkins place", at or near a "white house." Agency may also be established by circumstantial evidence, but again, the proof must in that case be sufficiently strong to establish guilt of the

defendant as in any other case based on circumstantial evidence. Witnesses were asked the following question: "You don't know whether this colored man was selling for him or not do you?", and they invariably answered that they did not, or "Naw, sir, I don't know."

■■ The allegation in the information that the court had adjudicated in a former hearing that defendant was in possession of the lands described in the Petition is not evidence in this case, because, unlike direct contempt committed in the presence of the court, constructive contempt must be established by competent evidence and contemnor's guilt proven beyond a reasonable doubt.

■■ This Court has always reserved the responsibility of deciding from the record whether or not the State established guilt of a defendant on a charge of contempt. ■■ The general rule that the Supreme Court will not reverse an order of the Chancellor unless he is manifestly wrong does not apply to contempt proceedings. This Court is empowered to review cases and decide whether or not there has been actual contempt of court. See Evers v. State, supra; Brannon v. State, supra; Melvin v. State, 210 Miss. 132, 48 So. 2d 856; Ballew v. Case, Admrx., etc., 232 Miss. 183, 98 So. 2d 451.

We are of the opinion that the State did not establish the charge of contempt against appellant, wherein it is sought to show that he sold intoxicating liquor, or sold it through an employee or agent, on the property described. Moreover, insofar as the sale of beer is concerned, there is no evidence in the record that it is unlawful to sell beer in Lee County.

We do not deem it necessary to pass upon the other issues raised by appellant; because we are of the opinion, and so hold, that the direct and circumstantial evidence in this case is not sufficient on which to base a decree finding appellant guilty of constructive contempt of court. The judgment of the lower court is therefore reversed and the defendant discharged.

638

Reversed and Defendant Discharged.

*Lee, P. J.,* and *Arrington, McElroy* and *Jones, JJ.,* concur.