Bailey *v.* State Ex Rel. Jesse L. Yancy, Jr.,
District Attorney, et al.

No. 43663 November 1, 1965 179 So. 2d 559

*Gilder & Cook,* Houston; *Lawrence Chandler,* Calhoun
City, for appellant.

860

*Delos H. Burks,* Asst. Atty. Gen., Jackson, for appellee.

BRADY, TOM P., J.

This is an appeal from a decree of the Chancery Court of Calhoun County finding appellant guilty of contempt of that court by a willful criminal and contumacious refusal to abide by injunctive order prohibiting violation of intoxicating liquor laws. The appellant was sentenced to pay a fine of $500 and to serve forty-five days of a six months sentence in the county jail. The pertinent facts are as follows:

On August 27, 1964, the district attorney, Jesse L. Yancy, Jr., filed a bill for injunction, temporarily en-

joining James Bailey and wife, Mary Bailey, from violating the intoxicating beer and liquor laws of the State of Mississippi. Order for the temporary writ of injunction was entered by Chancellor William Anderson on August 28, 1964, and the temporary writ of injunction, without notice, was served on appellant and his wife on August 31, 1964, enjoining them from the violation of the state liquor laws.

The record discloses that affidavits for search warrants were made by Sheriff Bryant before W. S. Malone, Justice of the Peace, for a search of appellant's automobile and of the premises of appellant and his wife, on September 18, 1964; that Justice of the Peace Malone issued search warrants on that date, as is evidenced by Exhibits I, II and A to the testimony of Sheriff Bryant.

Deputy Sheriff Richard Mooneyham testified that when he, the sheriff, and his three special deputies, who had just been sworn in, arrived at Slate Springs, where the appellant resides, they first proceeded to search the home of appellant's son, Bruce Bailey, for which a search warrant had also been issued. Not having a search warrant for appellant's home with them, Deputy Mooneyham testified that he then returned to his car, which he had parked just north of Calhoun City and in which the search warrant had been left when he and the sheriff had transferred from his car to the sheriff's car to join the three special deputies, Patterson, West and Hardin.

Deputy Mooneyham testified that when he got back to appellant's home, he presented a copy of the search warrant to Mrs. Bailey. Deputy Patterson likewise testified that, upon arriving at the appellant's home, Sheriff Bryant and Mr. Hardin searched Mr. Bruce Bailey's home first; that he and Deputy West remained in front of appellant's home while Deputy Mooneyham went back to pick up the missing search warrant for appellant's home which they claimed had been left in Mooneyham's

car. Appellant's witness, Mrs. Sue Bailey, his daughter-in-law, in corroboration, testified that the officers first searched appellant's car and then the sheriff and Deputy Lewis Hardin searched her home while the other two deputies, Patterson and West, sat on a picnic table in the appellant's yard; that they sat there for about thirty minutes while Deputy Mooneyham went to get the search warrant for appellant's home.

The conflict between the testimony of the sheriff and that of his two deputies was not reconciled. Deputy Patterson testified that when Mooneyham returned with the warrant he gave it to appellant's wife and he and Mooneyham searched appellant's home. They crawled under the house and, by moving a two by four, Mooneyham found a half pint of whiskey. Mooneyham went into appellant's house while he bumped the walls on the outside. Subsequently he went into the house with Mooneyham and they found an old opening in the floor in Bobby Bailey's room covered with a rug under which a five gallon milk can had been buried in the ground, and beside the milk can Mooneyham found another half pint of liquor in a paper sack.

The appellant assigns seven errors committed by the trial court. It is not necessary that the errors assigned be considered separately in deciding this case, and we will deal only with that which is essential in the disposition of this cause.

At the outset, for the disposition of this case, it is not necessary to determine whether, under the above stated facts, the search of appellant's home was made without first obtaining a search warrant for the house, as urged by the appellant. It is also unnecessary to consider the errors assigned relating to the attitude and the rulings of the chancellor relating to the examination of witnesses.

The testimony of the state's witnesses, when considered alone, is conflicting, and the witnesses for the

state did not reconcile the conflicts. The conflicts relate to the preparation of the search warrants, in whose car the search warrant was left, which warrant was first served, and which search was first made.

The record discloses appellant denied that the whiskey was his. He testified that he had removed all intoxicating liquor from his home after being served with the injunction, and that he had not possessed any since receiving the injunction. His nineteen year old son, Bobby, who was not present when the search was made, testified that he had purchased the two identical half pints of whiskey near Derma, from a Negro who worked on Paul Flemming's place. He stated he bought it the night before it was discovered by Deputy Mooneyham; that he had stored it beside the milk can, where it was found, and that he was going to drink it at a football game between Ittawamba Junior College and Holmes Junior College to be played at Fulton, Mississippi, that week.

The record discloses that Bobby lived in appellant's home and occupied the bedroom where the hole had been previously cut in the floor, below which the milk can had been buried. In appellant's home, his wife, his daughter, Betty, age twenty years, and his mother also resided.

This Court, speaking through Justice Rodgers, in Jenkins v. State, 242 Miss. 627, 136 So. 2d 205 (1962), quoted from the case of Stuart v. Reynolds, 204 Fed. 709 (5th Cir. 1913), as follows:

(I)t is proper to adhere substantially to the method of criminal procedure, except in the matter of jury trial . . . . (242 Miss. at 633; 136 So. 2d at 207.)

This Court further stated:

The rules of evidence applicable to criminal cases generally are also applicable to proceedings to punish for contempt. . . . The proof must establish the guilt of the defendant beyond a reasonable doubt. (242 Miss. at 635; 136 So. 2d at 208.)

This Court has always reserved the responsibility of deciding from the record whether or not the State established guilt of a defendant on a charge of contempt. The general rule that the Supreme Court will not reverse an order of the Chancellor unless he is manifestly wrong does not apply to contempt proceedings. (242 Miss. at 637; 136 So. 2d at 209.)

The record discloses that the state made no effort to rebut the testimony of appellant and his son, Bobby, except to imply that Bobby perjured himself. The district attorney threatened the witness with impending punishment for perjury, but Bobby Bailey still maintained that the whiskey was his, and the state was unable to get him to vary his admission that he purchased and concealed the two half pints of whiskey.

██ █ We pointed out in Brannon v. State, 202 Miss. 571, 583, 29 So. 2d 916, 919 (1947), where the appellant, as here, was charged with constructive contempt, as follows:

(T)his charge against appellant was one for constructive contempt and to sustain constructive contempt the law challenges the State to prove it beyond a reasonable doubt and clothes the prisoner with a presumption of innocence until that is done.

In the trial of a criminal case there is no presumption which is paramount to the presumption that the accused is innocent until he has been proven guilty beyond every reasonable doubt. █ The presumption that intoxicating liquor found in a home belongs to the head of the family who resides there is a rebuttable presumption and this Court thus has held repeatedly. Williamson v. State, 191 Miss. 643, 4 So. 2d 220 (1941).

 █ It is to be noted that in his opinion the learned chancellor frankly concedes that it is possible that the appellant could be innocent of a willful and intentional violation of the injunction. We quote from a part of the forthright opinion:

Now, it might be this. I can see this might be a possibility. That after this injunction was granted that he intended to clear out all . . get all this liquor out of there, and probably had a pretty good quantity of it and accidently left those two half-pints. As I say that is a possibility. I am not saying he kept on selling it, but he kept on, somebody kept on possessing it, and it was his house, he lived there, he is the father and the husband, and as I said a moment ago, the master of the house.

We have carefully read the record in this cause, studied the briefs of opposing counsel, and after due deliberation we have reached the conclusion that the state's evidence has failed to prove beyond a reasonable doubt that the appellant willfully, criminally and contumaciously violated the chancellor's injunctive order prohibiting the possession of intoxicating liquor. See Jenkins v. State, *supra;* Bolin v. State, 229 Miss. 798, 91 So. 2d 847 (1957); Shumpert v. State, 229 Miss. 730, 91 So. 2d 745 (1957); Evans v. Evans, 193 Miss. 468, 9 So. 2d 641 (1942); Williamson v. State, *supra;* Brazeale v. State, 133 Miss. 171, 97 So. 525 (1923); Ramsay v. Ramsay, 125 Miss. 715, 88 So. 280 (1921); Grace v. State, 108 Miss. 767, 67 So. 212 (1914).

The judgment is therefore reversed and the appellant is discharged.

Reversed and appellant discharged.

All Justices concur except *Gillespie, J.,* who dissents, and *Inzer, J.,* who took no part.

GILLESPIE, J., dissenting:

In my opinion the evidence was sufficient to sustain the findings of the chancellor. It would serve no purpose to discuss the evidence or the applicable law. My brethren have given thorough consideration to all aspects of the case and find appellant should be discharged, and I dissent with reluctance and deference.