Seay *v.* State.

Division A. Dec. 3, 1951.

No. 38219 (55 So. (2d) 430)

Ely B. Mitchell, for appellant.

714

**Joe T. Patterson,** Assistant Attorney General, for appellee.

**McGehee, C. J.**

The appellant, Shelton Seay, who is a Negro, was tried and convicted for a felonious assault upon C. L. Pace, Jr.,

sheriff of Tishomingo County, by shooting at the said officer with a pistol from ambush in the nighttime. The said defendant was sentenced to serve a term of ten years in the state penitentiary on the ground that the shooting was done with intent to kill and murder, although the indictment does not specifically charge such intent.

The validity of the indictment was challenged not on the ground of any alleged insufficiency of its averments, but rather by a motion to quash the same on the ground that the jurors who served on the grand jury that returned the indictment were not selected in the manner required by the Fourteenth Amendment to the Constitution of the United States in that no Negro had served as a grand or petit juror in Tishomingo County during the last fifty years, and that the members of this race had been continuously and systematically excluded from jury service by the board of supervisors having failed or refused to place their names in the jury boxes on account of their race, even though a goodly number of Negroes were shown to be qualified electors and eligible for jury service. ██ The motion to quash the indictment was made on the further ground that there were two separate and distinct offenses or crimes charged in the same indictment, but which ground, if well taken, we think should have been raised by demurrer as a defect appearing on the face of the indictment.

On this appeal we do not reach the merits of the case since the proof disclosed without dispute that there was a Negro population of approximately 1,000 in the county, and that there were quite a number of Negro male qualified electors in the county who were eligible for jury service under the requirements of Section 1762, Code of 1942, as registered and qualified electors, in the absence of a showing that they possessed some of the disqualifications enumerated in this statute, or were not men of fair intelligence, sound judgment and good character. Such a showing was not made, and under

the decision of the Supreme Court of the United States in the case of Patton v. State of Mississippi, 332 U. S. 463, 68 S. Ct. 184, 187, 92 L. Ed. 76, the proof by a Negro defendant on a charge for an offense against a white person, that no Negro had served on a grand jury for the past 30 years is ''very strong evidence of purposeful racial discrimination'' in violation of the Fourteenth Amendment to the Constitution of the United States, which the State has the burden of disproving by showing that the names of Negroes were not placed in the jury box for some other reason than the fact that they are Negroes.

 In the instant case the defendant introduced in support of his motion to quash the indictment three former county superintendents of education, two former circuit clerks, three former sheriffs, the then tax assessor, and all of the members of the board of supervisors, whose testimony disclosed that the name of no Negro had been placed in the jury box out of which the grand and petit juries had been drawn for the last 30 years, including the box out of which the grand jury was drawn that presented the indictment here in question. The testimony of these officers failed to disclose any reason for the absence of the names of Negroes in the jury boxes, other than the mere fact that the supervisors just did not place their names in the same, the supervisors testifying in effect that they made no effort to ascertain whether the Negro male qualified electors were eligible for jury service or not.

The Supreme Court of the United States in the Patton case dealt with the factual situation presented there, the same as if it was the same situation presented in the case at bar, even though in that case there was at least as large a proportion of names of Negroes in the jury box in comparison with the number of Negroes qualified for jury service in Lauderdale County as there were names of white men in the jury box in comparison with the number of white male qualified electors who were eligible for jury service. We found it necessary to obey the mandate of the Supreme Court of the United States

in the Patton case to reverse and remand the same for a new indictment. Patton v. State, 207 Miss. 120, 40 So. (2d) 592, 41 So. (2d) 55; and a majority of the members of this Court reversed the case of McGee v. State, as reported in 203 Miss. 592, 33 So. (2d) 843, on the authority of the Patton case. There is nothing in the record now before us to indicate that a mixed grand jury of white and colored jurors would have reached any different conclusion as to whether or not an indictment should be returned than was reached by the all white grand jury which returned this indictment, nor is there anything to indicate that such a petit jury would have reached a different result than that reached on the trial of the present case against the appellant, Shelton Seay. Nevertheless, we are confronted with the necessity, under the cases of Patton v. State, supra; Neal v. Delaware, 103 U. S. 370, 397, 26 L. Ed. 567, 574; Norris v. Alabama, 294 U. S. 587, 591, 55 S. Ct. 579, 79 L. Ed. 1074, 1077; Pierre v. Louisiana, 306 U. S. 354, 361, 59 S. Ct. 536, 83 L. Ed. 757, 762; Bush v. Kentucky, 107 U. S. 110, 1 S. Ct. 625, 27 L. Ed. 354, 359; Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664, 666; Rogers v. Alabama, 192 U. S. 226, 24 S. Ct. 257, 48 L. Ed. 417; Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839; Patterson v. Alabama, 294 U. S. 600, 55 S. Ct. 575, 79 L. Ed. 1082; and Smith v. Texas, 311 U. S. 128, 132, 61 S. Ct. 164, 85 L. Ed. 84; of reversing and remanding the case for proceedings not inconsistent with this opinion.

Reversed and remanded.