KENNARD *v.* STATE

No. 41890 April 3, 1961 128 So. 2d 572

*R. Jess Brown,* Vicksburg, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

GILLESPIE, J.

Appellant was indicted, tried and convicted of the crime of burglary. He was jointly indicted with Johnny Lee Roberts. Roberts entered a plea of guilty and testified against appellant.

While the appellant took the stand and denied the charges made against him, there was ample evidence to justify the jury in finding the following facts.

Roberts was acquainted with appellant, having once lived on appellant's farm. Roberts had been employed by the Forrest County Co-op, Inc., as a helper on the delivery truck, for several years prior to September 25, 1960, the date of the alleged burglary here involved. Appellant went to Roberts' home on a Thursday night before September 25, 1960, and asked Roberts about getting some feed "on the side." The Forrest County Co-op sold chicken feed and the appellant had theretofore been a customer of the Co-op. Appellant told Roberts he would pay him $2.50 a sack, which was considerably less than the price of egg mash. Roberts then told appellant that he did not know right then, that he would see. Appellant again saw Roberts on either Friday or Saturday night and asked about the feed and Roberts told appellant it would be Sunday morning. On one of these occasions appellant suggested Roberts leave the rear door to the Co-op unbarred so that entrance could be made by shoving the door open. When the

Co-op closed at noon, Saturday, September 24, 1960, Roberts left the rear door unbolted and about daylight the following morning Roberts drove his automobile to the rear of the Co-op store and entered the rear door he had left unbarred. He loaded five sacks of egg mash, a chicken feed, into the trunk of his automobile and went back into the store and placed about six more sacks on the dolly used to move the feed. About that time Roberts saw the night watchman, who was a special night watchman who worked only on weekends and who watched several other businesses, come around the building. The night watchman saw Roberts' automobile but did not see Roberts. He took the tag number of Roberts' automobile and went directly to another place across the street to call the police, and while he was gone Roberts left with the five sacks of feed in his automobile. Roberts drove directly to appellant's chicken house and put the five sacks of egg mash therein. He then drove to appellant's home, located about a mile and a half from the chicken farm, where appellant was standing in his yard. Appellant gave Roberts ten dollars. Roberts told appellant the night watchman had gotten his tag number and appellant said he would do away with the feed. Appellant also told Roberts to go to Roberts' mother's house located about ten miles away and stay there. Roberts went to his brother's house and found the police were looking for him. When Roberts got to his home the police were there and arrested him. Roberts told the police what had happened and appellant was arrested at his home about nine A. M., after returning from his chicken house. A search warrant was obtained and the officers searched the appellant's chicken house and premises about noon the same day and a large amount of egg mash was in numerous large feeders but no full sacks of feed were found. A tag was found from a one hundred pound egg mash sack bearing serial number 7906930, and of the brand of feed sold by the

Forrest County Co-op. The sack bearing the next serial number, 7906931, was found on the dolly at the rear of the Co-op store.

It is first contended that the lower court erred in overruling a demurrer to the indictment. We are unable to find sufficient merit in this assignment to justify discussion. The indictment meets all the tests laid down in our cases both as to form and sentence.

Appellant contends that the proof was insufficient to support the verdict. As already stated, the testimony was ample to justify the jury in finding the facts as stated above. Appellant's argument is largely to the effect that there was no testimony that appellant actually participated in the burglary, and that there was no proof that appellant and Roberts acted in concert to accomplish the crime of burglary.

Section 1995, Mississippi Code of 1942, reads as follows: ''Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not.''

 █ The evidence fully justified a finding by the jury that appellant and Roberts formulated a common design to commit the crime and that prior to the actual entrance into the storehouse of the Forrest County Co-op these parties had an understanding concerning the place to be entered, how entry was to be gained, what was to be taken therefrom, the time of entry, and the amount Roberts was to profit per sack of feed. It was not necessary that the State prove appellant was physically present at the time of the commission of the crime. Noble v. State, 221 Miss. 339, 72 So. 2d 687; 77 C.J.S. p. 470; Wince v. State, 206 Miss. 189, 39 So. 2d 882; West v. State, 233 Miss. 730, 103 So. 2d 437.

Appellant filed motions to quash the indictment and the venire on the ground of systematic exclusion of

Negroes from the grand and petit juries which constituted a denial of due process of law and equal protection of the law. After a hearing on these motions they were overruled, and appellant assigns this action of the trial court as error. The two motions were heard together and present but one question: Did the evidence require a finding by the trial court that there was a systematic exclusion of Negroes from the juries?

The hearing on this motion was rather lengthy and numerous witnesses were introduced, including nearly all the officials of Forrest County. In summary, the testimony showed as follows. The poll books of the county show "W" and "C" following the names of registered voters to indicate white and colored. There are Negroes registered and qualified to vote in the County, but the number was not shown. According to the last census, Forrest County had a total population of 45,055, of which 12,965 were non-white. The distribution of the white and non-white population among the five supervisors' districts and the various voting precincts was not shown; nor was distribution between urban and rural shown. The jury boxes are filled from a list of registered voters by the five members of the board of supervisors from their several districts from the registered voters who are not disqualified for jury service.[1] The jury box is filled without regard to race. For many years Negroes have been summoned for jury service, but the proportion of white and colored was not shown. Negroes were summoned for jury service at the term of court preceding the one during which appellant was tried but it was not shown whether any were summoned

---

[1]Under Section 1762, Mississippi Code of 1942, the following persons are disqualified for jury service: Females, those unable to read and write, those convicted of an infamous crime, those convicted of the unlawful sale of liquor within five years, common gamblers and habitual drunkards, overseers of roads within the past year, and those who served on a jury in the past two years.

for grand or petit jury service for the term during which appellant was tried. Negroes have served on juries in Forrest County in the recent past.

The motions alleged appellant is a Negro. It was traversed. No proof was offered that appellant was in fact a Negro. We deal with the case as if this was shown.

■■ It cannot be lightly concluded that the officials of Forrest County have engaged in discriminatory practices by systematically excluding Negroes from jury service, and the burden was upon appellant to establish his allegations by proof in accordance with legal standards. Akins v. Texas, 325 U.S. 398, 89 L. Ed. 1692; cf. Hernandez v. Texas, 347 U.S. 475, 98 L. Ed. 866. ■■ And, while it was not shown in the present case that there were no Negroes on the grand or petit juries which indicted and tried appellant, if it be assumed there were not, the fact that Negroes were not included in a particular jury is not enough to establish that there was actual discrimination because of race. Snowden v. Hughes, 321 U.S. 1, 88 L. Ed. 497, (see cases therein cited). The facts as already stated are substantially without conflict, and any conflicts in the testimony were factual issues to be resolved by the trial court. Akins v. Texas, supra. Of the thirteen persons called by appellant in regard to whether Negroes were summoned to serve on juries, eight testified positively that Negroes had been so summoned over an extended period of time up to and including the July 1960 term of court. (Appellant was tried at the next term of court which convened in November 1960). None of the witnesses testified that Negroes had not been summoned. Some testified that Negroes had served on juries. The witnesses who did not know whether Negroes had been summoned for jury service were not shown to be in a position to know. For instance, the chancery clerk and members of the board of supervisors had no particular reason to know who was summoned for jury service. The

lawyers who testified for appellant would know and they testified Negroes were summoned and served.

■■■ Appellant contends that he made a prima facie showing of purposeful discrimination by systematically excluding Negroes from juries. Apparently this contention is based on the ground that all of the witnesses were introduced by appellant. But appellant failed to meet the burden assumed by him because the witnesses proved the opposite. Cf. Patton v. Mississippi, 332 U. S. 463, 92 L. Ed. 76; Reece v. Georgia, 350 U.S. 85, 100 L. Ed. 77.

Appellant relies largely on the recent case of Goldsby v. Harpole, 273 F. 271, a Mississippi case concerning Carroll County, Mississippi. In that case it was shown that over half the inhabitants of the county were non-white, yet none of the officers who testified could remember an instance of a Negro ever being on the jury list. Moreover, no Negroes were registered to vote in Carroll County. In the present case there was no such proof; the proof was to the contrary. The Goldsby case does not apply.

■■■ Appellant contends that even if Negroes were on the jury list, there was an inappropriate and arbitrary number. There was no proof to this effect. Moreover, the courts have never held that a defendant is entitled to any particular number or proportion of jurors of a given race, or even that there must be a mixed jury. The question has always been whether there was a purposeful exclusion of members of the defendant's race because of race. This is a different thing from the right to have a jury composed of some or so many persons of the defendant's race. The constitutional requirements are met when a fair jury is selected without regard to race.

■■■ Proportionate representation of races on a jury is not a constitutional requisite. Akins v. Texas, supra; Ex parte Commonwealth of Virginia (Virginia v. Rives), 100 U.S. 313, 25 L. Ed. 667; Cassell v. Texas, 339 U.S.

282, 94 L. Ed. 839. The courts have recognized that for various reasons there are instances of disproportionate representation of the white and colored races on jury lists. Brown v. Allen, 344 U.S. 443, 97 L. Ed. 469. And in that same case it was recognized by the Supreme Court of the United States that it would not strike down state practices which are short of a denial of equal protection or due process in the selection of juries. This Court, in Cameron v. State, 233 Miss. 404, 102 So. 2d 355, stated that since the decision of the United States Supreme Court in Patton v. Mississippi, 332 U. S. 463, 68 S. Ct. 184, 186, 92 L. Ed. 76, it is a matter of common knowledge that members of the boards of supervisors in most, if not all, of the counties of this State have been placing in the jury boxes the names of Negroes who meet the requirements of being men of good intelligence, sound judgment and fair character, and who do not possess the disqualifications enumerated in Section 1762, Mississippi Code of 1942. The same opinion recognized that it is not required that all the names of Negroes be placed in the jury box.

In Seay v. State, 212 Miss. 712, 55 So. 2d 430, this Court applied the decision of the Supreme Court of the United States in Patton v. Mississippi, supra, and reversed the conviction on proof disclosing that Negroes had been systematically excluded from the grand jury which indicted Seay.

Appellant also contends that Negroes have not been allowed to register solely on the ground of race or color and that this has resulted in the systematic exclusion of Negroes from jury service. This contention is refuted by the evidence. It was shown that there were qualified Negro electors and that there were Negroes who were on the jury lists over an extended period of time. Four persons testified for appellant that they had been unable to register, and that on some occasions when they tried to register they were accompanied by

others who likewise were unable to register. The issue here is not whether some individual or individuals have been denied the right to register. If such was the issue, the proof in this case in regard to the persons just referred to falls short of proving that these individuals were qualified to register, or that they were denied the right to register because of race. Cf. Darby v. Daniel, 168 F. Supp. 170.

We have carefully considered the contention of appellant and the authorities he relies on and conclude that he failed to establish his charge that he was denied due process and equal protection of the laws by reason of Negroes being systematically excluded from the juries of Forrest County.

Appellant filed a motion for a writ of subpoena duces tecum directing the circuit clerk to appear and submit to the court the registration books containing the names from which all jury lists are drawn. He assigns error here contending that the lower court overruled the motion. We are of the opinion that appellant is not in a position to complain in this regard. There appears in the record the following: ''Here defendant's motion for subpoena duces tecum was withdrawn by counsel for defendant.''[2] ██ █ Appellant may not complain of the lower court's failure to sustain his motion when the motion was withdrawn. The withdrawal of the motion was made by appellant's counsel prior to the beginning of the trial on the merits. Moreover, it does not appear from the record that appellant ever called up for hearing his motion for subpoena duces tecum, nor was an order ever entered overruling the motion. The record shows that during the questioning of the circuit clerk appel-

---

[2] ██ █ This entry imports absolute verity since appellant had ten days notice to examine and correct transcript. Section 1641, Mississippi Code of 1942. Appellant makes no contention the record is not correct.

lant's counsel requested time to either investigate or have the clerk get certain information from the records as to the number of Negroes registered to vote. It was shown that such a search would take an estimated three weeks' time, if the clerk's other duties were attended. It was also shown that the records were under seal in connection with an election. Whether the request was made during the questioning of the clerk on the motion to quash the indictment and the venire had reference to the motion for subpoena duces tecum is not clear. It is clear that appellant never called up for hearing the motion for duces tecum and the court never entered an order thereon. These circumstances and the fact that appellant withdrew the motion indicate the lack of merit in this assignment of error.

After a careful review of the record we are of the opinion that there is no reversible error and that the question of appellant's guilt was a question for the jury, whose verdict is fully supported by the proof.

Affirmed.

*Lee, P. J.,* and *McElroy, Rodgers* and *Jones, JJ.,* concur.