JONES, Justice.
In the summer of 1968, there were in Harrison County, on the beach, along old Highway 49 (apparently abandoned by the *791 Highway Department when a new road was built) on the northern edge of Gulf-port and at other points, certain places which existed on proceeds from law violations, particularly those prohibiting gambling and prostitution. They operated to a large extent through what is commonly called night clubs.
Able and courageous officers, with their aides, exerted much effort to eliminate this growing blight on the Mississippi Coast, a rendezvous for many, who there seek recreation and rest from the strenuous duties of everyday living.
As affecting this particular case, the officers had caused several to be closed, preventing them from employing and using B-girls, and from having prostitutes pursue their occupation in or from these places.
One Charles Conway owned or operated a place known as the “Beverly Lounge.” Before the injunction, we are told, Conway had not engaged in the business of prostitution, but after the other places were closed, he was adding to and reshaping Beverly Lounge. He learned, however he was not going to be permitted to reopen for the purpose for which he was remodeling so as to include bedrooms. In the meantime, the place known as the “Tango Club,” on old Highway 49, had opened, or reopened, with four girls and one bartender to serve a counter about six or maybe eight feet long and one small table. There were bedrooms in the back of the building.
Conway and his friend, Jim Blackwell, did not think anyone should operate such a place, unless Conway could. They, therefore, decided to go talk to Ocie Anderson who was running the Tango Club. This decision was made in the “Gay Paree” on the beach. They then returned to Conway’s place, and to underscore and emphasize what they might say, secured their pistols, and also carried with them the man who was making the additions to or alterations on the Beverly Lounge.
A short while after they arrived at the Tango, Anderson returned and subsequently there occurred a “shoot-out.” Ocie Anderson was wounded.
The grand jury indicted appellant, Jim Blackwell, and Charles Conway jointly on a charge of intentionally pointing and aiming a pistol at Ocie Anderson, discharging same and'wounding the said Anderson.
A severance was granted.
Appellant was tried and convicted. He appeals here, and we affirm.
Evidence as to prostitution in and around these places was admitted, and complaint is made that this was error, inasmuch as it was permitting the jury to consider other crimes. This proof was offered and admitted as evidence of motive; and other evidence and questions about which complaint is made were admitted as corroborative of that showing prostitution. The evidence as to prostitution was also admissible because the business of prostitution was shown to be connected with the crime charged. Bangren v. State, 198 Miss. 359, 22 So.2d 360 (1945); Floyd v. State, 166 Miss. 15, 148 So. 226 (1933).
Complaint is also made that the district attorney insinuated that the four girl witnesses for the State were prostitutes, but the court stated that they would not have to answer that question.
It is also alleged that the attorney was permitted to ask leading questions. The witnesses called by the State included the four women who worked at the Tango Club. Naturally they were reluctant witnesses as to matters affecting themselves, their employers, and others connected with the operation generally. The court permitted considerable latitude in their examination. In view of the circumstances, we cannot see any abuse of discretion by the court. Thomas v. State, 217 So.2d 287 (Miss.1968); Summerville v. State, 207 Miss. 54, 51 So.2d 377 (1949); Cutshall v. State, 203 Miss. 553, 35 So.2d 318 (1948).
*792 There was ample evidence to submit the case to the jury and to sustain their verdict. In addition to motive, it was shown that the appellant and Conway were the aggressors. They returned from the Gay Paree to Conway’s place of business on the way to the Tango Club for the specific purpose of arming themselves and Blackwell secured either a .32 or .38 cal-ibre pistol according to Kraker who accompanied them, and Conway had a .357 Magnum. After the shooting, the deputy sheriff found eight empty shells around the bar where Ocie Anderson was shot. There were two .38 special shells behind the bar, and three .38 specials and three .357 Magnum shells between where Ocie Anderson was, when shot, and where Conway and Blackwell were when the shooting occurred. One witness testified that she saw Conway and the appellant with pistols drawn on Ocie Anderson; and him backed up against the wall at the bar. She also testified that she saw Conway with a pistol drawn on George Anderson threatening to kill him. It was shown that Ocie Anderson never fired his gun.
There was testimony that George Anderson fired the last three shots as Blackwell and Conway went out the door. An officer testified that when he got George Anderson’s gun later, it had six unfired shells in it, but that he did not smell the gun to see if it had been fired.
It was also testified that when Blackwell and Ocie came from their conference in front of the building, that Blackwell came in first backing up in front of Ocie, and when he started up in the corner at the bar, appellant pulled the pistol and said, “Don’t get in back of me.” Ocie was at the last barstool from the door when shot. The pictures included in the record show a tremendous amount of blood on the floor at this point.
It was testified by a witness that he saw Conway fire a gun. The same witness said that he saw Conway shooting at Ocie Anderson, and that Ocie Anderson was in front of the counter and George Anderson was in the back of the counter.
It was further shown by the witness, Kraker, that his life was threatened by the appellant and Conway; that Blackwell said the witness was a walking dead man, “if he told it wrong.” He further testified that he had to meet with Conway and Blackwell after each session of the grand jury where he testified; and lie to them as to what he had testified. The same witness testified that his life had been threatened with respect to this trial. He said that he was told he could not live here, and would always have to look over his shoulder; that he had just “had it” if he gave any damaging testimony. For the reasons hereinafter stated, the acts of Conway were admissible evidence to go to the jury.
Under our statute, Section 1995, Mississippi Code of 1942 Annotated (1956), an accessory to any felony before the fact is a principal and may be convicted as a principal in an indictment charging him as principal. Hathorn v. State, 246 Miss. 135, 149 So.2d 845 (1963); West v. State, 233 Miss. 730, 103 So.2d 437 (1958); Goss v. State, 205 Miss. 177, 38 So.2d 700 (1949). Blackwell, being an accessory before the fact, and, as such, a principal, Conway’s acts were admissible against appellant. Carr v. State, 175 Miss. 102, 166 So. 363 (1936).
It is said that the court erred in not requiring the State to produce Ocie Anderson. We have been unable to find in the record any motion or request by the defendant that the State be so required, but even if said motion had been made and overruled, we would not consider it error. See Sullivan v. State, 213 Miss. 14, 56 So.2d 93, 98 (1952); Ross v. State, 185 Miss. 438, 188 So. 295 (1939).
It is further sought to have error declared because the court granted an instruction ,and permitted the case to go to the jury so that the jury might convict appellant if he himself fired the shot that *793 wounded Ocie Anderson, or, if the shot was fired by Conway. We think Section 2013 and 1995, Mississippi Code of 1942 Annotated (1956) are clear and fully answer this assertion. However, in further response thereto, see Kennard v. State, 242 Miss. 691, 128 So.2d 572 (1961); West v. State, 233 Miss. 730, 103 So.2d 437 (1958); Merrell v. State, Miss., 39 So.2d 306 (1949); and Goss v. State, 205 Miss. 177, 38 So.2d 700 (1949).
The lower court did not abuse its discretion in admitting the pictures into evidence.
The case is affirmed.
Affirmed.
ETHRIDGE, C. J., and BRADY, IN-ZER and ROBERTSON, TJ., concur.