369 So.2d 757 (1979)
Erwin PAGE, Jr.
v.
STATE of Mississippi.
No. 51101.
Supreme Court of Mississippi.
April 18, 1979.
*758 Jones & Shields, Granville Jones, Meridian, for appellant.
A.F. Summer, Atty. Gen. by Phillip H. Schwartz, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant, Erwin Page, Jr., was indicted, tried and convicted for the crime of armed robbery in the Circuit Court of Lauderdale County. The jury returned a verdict of guilty and fixed the penalty at life imprisonment.
Appellant advances the following assignments of error, namely:
1. The appellant did not receive a fair trial by a jury of his peers in that there was only one black person on the jury panel presented to the parties.
*759 2. The lower court erroneously refused appellant's submitted instruction D-8.
3. Appellant's Fifth Amendment rights were violated.
4. The lower court erroneously permitted evidence regarding a crime other than a charge of armed robbery.
The principal witness as to the facts of the occurrence leading to appellant's indictment was Kermit Rascoe, an employee of Barrett-Nunnery Hardware Company in Meridian, Mississippi for twenty-six years. Rascoe testified that on January 12, 1978, he had closed the store at approximately 5:30 P.M., shortly after which he heard a knock on the door. He opened the door a couple of inches and saw appellant standing there and appellant told him he wanted to come in and discuss the matter of an old garnishment with which appellant had been involved while an employee at the store. Appellant had worked at the store about one year but had not worked there for approximately eight months prior to the time of the incident in question. Rascoe told appellant that the store was closed and if he would come back another time he would be glad to discuss the matter with him. Appellant thereupon forced the door open and Rascoe saw a butcher knife in one of his hands and a pistol in the other. Appellant was not disguised and there is no question about his identity by Rascoe.
Appellant demanded that Rascoe give him money. As the store had closed, it was necessary to open the vault to secure any money. Rascoe was forced to do this while appellant was prodding him with the knife. After opening the vault they went inside where Rascoe secured something over $175 in cash and advised appellant that this was the only money there. Appellant then demanded Rascoe's personal money, and this was given to him. While they were in the vault and after no other money was found, Rascoe, with his back toward appellant, felt a blow to his back and upon looking around saw the handle of the knife protruding from his back. Appellant then pulled the knife from Rascoe's back and stabbed him in the back two more times. He then told Rascoe to turn around and look him in the eye and raised the gun. Rascoe pleaded with appellant, advising him that he would receive lighter treatment for armed robbery than for murder and was advised by appellant that he could not afford to let him live as he would have him in jail the following day. Appellant thereupon pulled the trigger and shot Rascoe in the chest, after which he left the vault and closed and locked the door. After much difficulty for about one and one-half hours, Rascoe was able to open the door and called the police and an ambulance. Fortunately, he lived.
Testimony was given by several members of the Meridian Police Department. After going to the scene and being told by Rascoe who the assailant was, they secured a warrant and went to appellant's home. They found him hidden in a closet and also found several items that had been taken from the store's vault. It is undisputed that appellant was given his full Miranda warnings. He was then asked where the gun was that was used in the robbery, but he did not answer immediately. A few minutes later, he directed the officers to the closet where the gun was found. The officers, according to the undisputed proof, were only in the residence a few minutes. Upon reaching the police station, appellant undisputedly again was given his Miranda warnings before being interrogated further.
At the beginning of the trial appellant's attorney dictated a motion requesting that appellant's plea of not guilty be changed to not guilty by reason of insanity. This motion was allowed and the trial was recessed for the purpose of having appellant examined by two mental health experts, Dr. Antonio Rubio, a psychiatrist, and Dr. Tom Elliott, a clinical psychologist. The reputation and ability of these experts was not challenged. The appellant offered the testimony of both expert witnesses during his defense presentation. Dr. Elliott went into detail as to his examination of appellant and his testimony as the result of his examination was that he found no evidence whatsoever of any kind of psychosis or any evidence of brain damage. He found no *760 evidence of organic damage. His opinion was that appellant would not have been psychotic at the time of the alleged crime; that he intended to rob and so admitted. The doctor concluded that at the time of the alleged crime appellant could distinguish right from wrong and could appreciate the natural consequences of his acts.
Dr. Rubio, whose testimony was also offered by appellant, stated that as a result of his examination he found no type of mental retardation or any type of psychosis.

ASSIGNMENT NO. 1.
Appellant makes no contention that there was a systematic exclusion of blacks from juries in Lauderdale County. He relied on the case of Ellzey v. Breazeale, 277 F. Supp. 948 (S.D.Miss. 1967). It is clear that the opinion has no relevance to appellant's contention here, which was that there simply happened to be only one non-white on the jury that heard his case. It cannot be assumed that for that reason the officials of Lauderdale County engaged in discriminatory practices by systematically excluding blacks from juries, as was the burden placed on appellant to establish. Kennard v. State, 242 Miss. 691, 128 So.2d 572 (1961); Raiford v. Dillion, 297 F. Supp. 1307 (S.D. Miss. 1969).
Appellant here in no way meets the burden established by the United States Supreme Court in Patton v. State, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947). There the Court said:
When a jury selection plan, whatever it is, operates in such a way as always to result in the complete and long continued exclusion of any representative at all from a large group of Negroes, or any other racial group, indictments and verdicts returned against them by juries thus selected cannot stand.
As hereinbefore stated, appellant made no effort whatever to show the existence of any practice of omission of blacks from jury service in Lauderdale County. There was no evidence whatever presented as to discrimination against blacks in the selection or constitution of the jury list. There is no merit to this assignment of error.

ASSIGNMENT NO. 2.
Appellant's requested instruction D-8 reads as follows:
The Court instructs the jury that if you find that the State has proved beyond a reasonable doubt all the essential elements of robbery, then you must find the defendant guilty of robbery, unless the State has failed to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the offense you find to have been committed. In order to prove the defendant sane at the time of the commission of alleged robbery, the State must prove beyond a reasonable doubt that at the time of the commission of alleged robbery the defendant had the mental capacity to realize and appreciate the nature and quality of his act and to distinguish between right and wrong with reference to the act he committed.
If after considering all of the evidence in this case you find the State has failed to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of alleged robbery, then your verdict must be not guilty by reason of insanity.
There is absolutely no evidence of any kind in the record or presented to the jury that in any way contended the appellant to be mentally incompetent, or to have not know the difference between right and wrong at the time of the alleged offense, or not be able to assist his attorneys in his defense. Appellant predicates his argument on the case of Gambrell v. State, 238 Miss. 892, 120 So.2d 758 (1960) which said the following:
In 1879, this Court in the case of Cunningham v. State, 56 Miss. 269, stated the following: "We think the true rule is this: Every man is presumed to be sane, and, in the absence of testimony engendering a reasonable doubt of sanity, no evidence on the subject need be offered; but whenever the question of sanity is *761 raised and put in issue by such facts, proven on either side, as engender such doubt, it devolves upon the State to remove it, and to establish the sanity of the prisoner to the satisfaction of the jury, beyond all reasonable doubt arising out of all the evidence in the case."
Not only was there no evidence of mental incompetency of appellant but appellant's own witnesses, Drs. Rubio and Elliott, testified positively that appellant had no mental retardation, had no psychosis, and at all times, including the day of the robbery, knew the difference between right and wrong and was fully capable of assisting in his defense. There was nothing for the State to rebut and absolutely no evidence that would require the State to prove appellant sane, there being no evidence of possible insanity. This assignment is without any merit.

ASSIGNMENT NO. 3.
As hereinbefore stated, appellant undisputedly was read his Miranda rights before any interrogation after he was found in the closet at his residence. This assignment of error is predicated only on the evidence that when appellant was first asked about the gun, he made the remark, "What gun?" and did not immediately give the location of the gun. Within a very short time thereafter he did change his mind and stated that the gun was in the closet. It appears that there was not even sufficient time to get a second Miranda warning before asking about the gun a second time. Certainly no case has ever held that the warnings should be given a second time before asking a second question. It is undisputed that the officers were at the home only from five to ten minutes before leaving for the police station with appellant. At no time did appellant request that interrogation be stopped. As hereinbefore stated, it is undisputed that he was given a second warning after arriving there and before any further interrogation. There is no merit in this assignment.

ASSIGNMENT NO. 4.
Appellant complains that it was error to permit evidence that Rascoe was stabbed by the knife three times and shot through the chest during the course of the armed robbery, contending that this was evidence of an entirely different crime from that for which he was indicted.
In the first place, there was no objection to this testimony at the time it was injected into the record and for that reason, if for no other, it would be incompetent to raise here. Williamson v. State, 330 So.2d 272 (Miss. 1976); Mississippi Supreme Court Rule 42.
In the second place, the statute under which appellant was indicted (Mississippi Code Annotated section 97-3-79 [Supp. 1978]) defines "armed robbery" as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
It is readily apparent that the exhibition of a deadly weapon is a key element of the crime of armed robbery and a description of the crime certainly could not be made adequately without describing the weapons used and what was done with those weapons.
Furthermore, it is clear from the prior opinions of this Court that where evidence of another crime forms part of the same transaction of which the crime charged is constituted and is so intimately connected therewith that one cannot be proved without some proof of the other, the evidence is admissible. Brooks v. State, 242 So.2d 865 (Miss. 1971). There is no merit in this assignment of error.
*762 The jury had ample and overwhelming evidence to find appellant guilty of the crime of armed robbery and clearly had the authority under Code section 97-3-79 to fix appellant's penalty at life imprisonment.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.