BARNES, J.,
for the Court:
¶ 1. A Yazoo County Circuit Court jury found Jerica Evans guilty of accessory before the fact to the sexual battery of her cousin, Glenda Hall.[1] The trial judge sentenced Evans to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and five years of supervised probation. Evans now appeals her conviction and sentence, raising issues regarding the sufficiency and weight of the evidence, and whether the trial court erred in limiting the defense’s closing argument. Finding no error, we affirm.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 2. In 2009, Evans, who was seventeen years old, and her younger brother were living with their grandmother, Debra Dil-lan, in Yazoo City, Mississippi. They were placed in Dillan’s home by the Department of Human Services, and had been living there approximately two years. Also living with Dillan were two of her grandchildren (Evans’s first cousins), Glenda and Antoine Hall, who were eight and six years old, respectively. They had been living with Dillan for about six years while their mother, Gina Hall, was living in Jackson, Mississippi, trying to “get on her feet.” Additionally, a twenty-eight-year-old man named Tommie Lee Jones had recently moved into Dillan’s house and was sleeping on the couch.[2] Dillan, however, did not know Jones’s true age at the time because Jones presented himself to Dillan as a seventeen-year-old student.
¶ 3. Around the date of April 17, 2009, Dillan called her daughter, Gina, to come get her two children because “Jerica was causing trouble.” Gina drove to Yazoo City and picked up her children. Upon returning home, she smelled a foul odor coming from Glenda’s “vagina area.” She told Glenda to bathe, and noticed an abnormal discharge in Glenda’s underwear. Gina immediately took Glenda to the emergency room at St. Dominic’s Hospital in Jackson, Mississippi, fearing Glenda had been “messed with.”
¶ 4. Dr. James Aaron examined Glenda and found her to have trichomonas, a sexually transmitted disease.[3] Dr. Aaron testified the symptoms “started one week ago” and were “in the context of the patient’s older first cousin’s 27-year-old boyfriend did oral sex on her and had her do oral sex on him in front of his girlfriend at the children’s grandmother’s house.” Dr. Aaron found Glenda’s history reliable. His primary diagnosis was that Glenda had been sexually assaulted.
¶ 5. Glenda’s mother testified that while at the hospital, when she asked Glenda what happened, Glenda stated that “she was being licked by Tommie Lee while Jerica was instructing her what to do.... Jerica made her perform oral sex on Tommie Lee.... ” and Jerica made threats to Glenda if she told anyone what happened. Additionally, Lisa Caddie, the “on-call” social worker at St. Dominic’s, testified that *725 when she spoke with Glenda, it was her understanding Glenda’s “cousin’s boyfriend sexually abused her”; Evans “was present when it occurred”; and Evans threatened Glenda if she told anyone what happened. Glenda told her the incidents occurred approximately one week before April 17.
¶ 6. The next day, Glenda’s mother went to the Yazoo City Police Department to press charges. First, she spoke briefly with Captain Andre Lloyd, and then Investigator Larry Davis. Investigator Davis testified that Glenda stated Evans told her “to go into the bedroom where Tommie Lee Jones was and to do whatever he wanted to do.”[4] According to his interview and report, Glenda told Investigator Davis that Jones performed oral sex on her, and she on him, under Evans’s instructions. Investigator Davis arranged for a forensic interview of Glenda in Tupe-lo, Mississippi, with an individual who specializes in interviewing children.
¶ 7. After the interview, Jones was arrested for sexual battery. Evans was initially arrested for witness tampering because she had told Gina that if she went “down for something [she] didn’t do, [she] was going to kick [Gina’s] ass.” In December 2009, Jones was indicted for sexual battery, and Evans was indicted for accessory before the fact to sexual battery.
¶ 8. In May 2009, Glenda began seeing a licensed certified social worker, Ms. Kel-so, in Jackson. Kelso testified that during her treatment of Glenda, the child had described two instances of sexual battery. On one occasion, Evans brought Glenda into the living room where Jones was waiting with his genitals exposed. Evans instructed Glenda to perform oral sex on Jones, and Glenda complied, while Evans watched. During another occasion, Glenda was getting out of the bathtub when Evans took Glenda’s clothes and told her to come into a bedroom. There, Jones held her down while he performed oral sex on her, and Evans watched.
¶ 9. Kelso also testified that Glenda told her Evans and Jones had driven her and her brother out into the woods in a deserted area at night. They shut off the car, made the children get out of the car, and told them “now you’re gonna die.” Kelso also relayed that whenever Dillan would leave the home, Evans was “in charge,” and would often yell or hit Glenda. Kelso opined that Glenda was truly fearful of Evans, Glenda had not been coached, and she was a credible witness.
¶ 10. At trial, Glenda’s brother, Antoine, corroborated the incident in the woods and Evans’s threats. Antoine was six years old at the time. He testified about waking up in the middle of the night and seeing Jones “on top of’ Glenda. Antoine told Jones “to get off’ of his sister, but Jones merely told Antoine to go back to bed. Antoine stated Evans was watching what Jones was doing to his sister.
¶ 11. Glenda testified at trial about two separate occurrences of sexual battery. In one occurrence, Glenda came out of the bathroom and asked Evans for her clothes. Evans told Glenda to go to Evans’s bedroom, but Evans never brought Glenda her clothes. Instead, Evans and Jones came into the room. Evans stood at the foot of the bed and told Jones “what to do” while Evans watched. Jones put his tongue on her “privates.” Glenda asked Jones to stop, but Evans told Jones he did not have *726 to stop. Glenda tried to push Jones off of her, but he was too heavy.
¶ 12. During the second incident, Glenda testified that she was outside playing when Evans called her inside Dillaris house. Jones was on the couch with his pants pulled down. Evans told Glenda to put her mouth on Jones’s “private parts.” Glenda complied after Evans threatened to kill her and her mother. Glenda also testified that Evans whipped and beat her and Antoine.
¶ 13. Evans testified in her own defense. She denied taking part in Glenda’s sexual battery, and that Glenda told her Jones was “licking on” her, but then Glenda recanted and stated she was “just playing.” Evans claimed Jones forced her to have sexual intercourse with him. Evans claimed Gina was forcing Glenda to accuse Evans of the crime because there were “family problems.” Evans admitted to threatening Gina, and tapes were played of the threatening voice-mail recordings.
¶ 14. Also testifying for the defense was Carla Brown, Glenda’s and Evans’s cousin. She heard about Jones’s “molesting” Glenda from her aunts, but Brown did not think Evans was involved. But when she asked Evans what happened, all Evans would say is, “I didn’t touch the child.”
¶ 15. After the jury convicted Evans of accessory before the fact to sexual battery, Evans was sentenced to twenty-five years in the custody of the MDOC, with five years suspended and five years of supervised probation. Evans filed a motion for a judgment notwithstanding the verdict or a new trial, which was denied. Evans now appeals.
ANALYSIS
I. Sufficiency and Weight of the Evidence
¶ 16. Evans claims the jury verdict was against the sufficiency and weight of the evidence. In reviewing the sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Nolan v. State, 61 So.3d 887, 893 (¶ 24) (Miss.2011) (quoting Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)). “The evidence will be deemed sufficient if, bearing in mind the reasonable-doubt standard, ‘reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense.’ ” Id. All credible evidence consistent with the defendant’s guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence. Robinson v. State, 940 So.2d 235, 239-40 (¶ 13) (Miss.2006) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)).
¶ 17. Regarding a challenge to the weight of the evidence, the reviewing court will not disturb the verdict unless allowing “it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The evidence will be viewed in the light most favorable to the verdict. Id. It is the jury’s role to assess the weight and credibility of the evidence and to resolve any conflicts in the evidence. Latiker v. State, 918 So.2d 68, 73 (¶ 12) (Miss.2005). Reversal of a conviction is warranted only upon finding that the trial court abused its discretion in denying the motion for a new trial. Dilworth v. State, 909 So.2d 731, 737 (¶ 20) (Miss.2005) (quoting Howell v. State, 860 So.2d 704, 764 (¶ 212) (Miss.2003)).
¶ 18. Evans argues that the testimony of Glenda is contradictory and thus insufficient. She also claims that it is unclear from the evidence whether Evans participated in Jones’s sexual battery of Glenda.
*727 ¶ 19. Evans was indicted under Mississippi Code Annotated section 97-1-3 (Rev.2006), which provides: “Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not.”[5] “The concept of an accessory before the fact involves some participation in the criminal act.” Clemons v. State, 482 So.2d 1102, 1105 (Miss.1985) (citing West v. State, 233 Miss. 730, 733, 103 So.2d 437, 439 (1958)). The Mississippi Supreme Court has affirmed numerous convictions of defendants as accessories “where the evidence reflected some conduct on the part of the accused which facilitated the consummation of the principal crime.” Id. (citations omitted). Lack of presence when the crime is committed “avails [the defendant] of nothing.” Id. (citing Kennard v. State, 242 Miss. 691, 695, 128 So.2d 572, 574 (1961)). But “mere presence at the time another suggests the possibility of future criminal conduct[,] without more[,] does not render one guilty as an accessory before the fact.” Clemons, 482 So.2d at 1106. “One who is an accessory before the fact or one who aids and abets necessarily enters into an agreement that an unlawful act will be done. [The individual] participates in the design of the felony.” Malone v. State, 486 So.2d 360, 364 (Miss.1986). Also, “evidence of the acts of the principal are admissible against the accessory before the fact.” State v. Peoples, 481 So.2d 1069, 1070 (Miss.1986) (citing Blackwell v. State, 231 So.2d 790, 792 (Miss.1970)).
¶ 20. There was sufficient evidence presented to the jury to find Evans an accessory before the fact to sexual battery. That Glenda had been sexually battered by Jones was not in dispute at Evans’s trial. There was ample evidence, as recounted above, that Evans was not only present, but participated in the sexual battery by facilitating Jones, and instructing and encouraging Glenda.
¶ 21. The jury was instructed on the necessary elements of accessory before the fact. Viewing the evidence in the light most favorable to the State, a rational trier of fact could find all essential elements of the crime beyond a reasonable doubt. Additionally, the jury rejected Evans’s version of the events. While there were minor inconsistencies in the various versions of the incidents, it is the province of the jury to resolve contradictions in the evidence. See Latiker, 918 So.2d at 73 (¶ 12). The weight of the evidence supports the verdict.
II. Closing Argument
¶ 22. Evans claims a new trial is warranted because her rights to due process were violated when the trial judge told defense counsel to “take his seat” during his closing argument, preventing him from completing it. The trial judge’s command was precipitated by instances during defense counsel’s closing argument where he repeatedly referenced information not in evidence. The trial judge warned him approximately five times during his closing argument, and once before it, to avoid these references, but he continued to make them.
¶ 23. While attorneys are allowed wide latitude in arguing their cases before a jury, they are limited to the facts presented in evidence, as well as any “deductions and conclusions ... reasonably draw[n] therefrom, and the application of *728 the law to the facts.” Wells v. State, 698 So.2d 497, 506 (Miss.1997) (citing Ivy v. State, 589 So.2d 1263, 1266 (Miss.1991)). The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is “whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Sheppard v. State, 777 So.2d 659, 661 (¶7) (Miss.2000) (citing Ormond v. State, 599 So.2d 951, 961 (Miss.1992)). Further, “[t]he purpose of a closing argument is to fairly sum up the evidence .... Counsel cannot, however, ... ‘appeal to the prejudice of men by injecting prejudices not contained in some source of the evidence.’ ” Id. (quoting Williams v. State, 445 So.2d 798, 808-09 (Miss.1984)).
¶ 24. Before defense counsel began his closing argument, the trial judge, in a bench conference out of the hearing of the jurors, warned defense counsel not to tell the jury “the things that we discussed at the bench,” because, as she later explained, he had a habit of making reference to such information that was not in evidence. Shortly after he began his closing, defense counsel proceeded to tell the jury: “I think perhaps young [Glenda] resented [Evans].... And it didn’t come out on the stand so I can’t really talk about it ... but Dillan said [Evans] once told her, ‘you don’t really know anything about [Glenda].’ I’m not gonna elaborate.” The prosecution objected to this negative suggestion about Glenda. The trial judge sustained the objection, and told defense counsel to “move on.” Soon after, defense counsel made the comment to the jury that there were not more exhibits for the jury to review because the State did not call all of its listed witnesses. Again, the State objected to this negative suggestion that evidence was being withheld from the jury.
The trial judge again admonished defense counsel that if information was not in evidence, it could not be discussed in closing argument. The trial judge also warned defense counsel that if he continued this tactic, she would “sit [him] down.” Shortly thereafter, the State objected after Evans’s counsel again made reference to documents not entered into evidence by the State, that “Jones was bound over to the grand jury....” A bit later in closing, defense counsel then made the comment that “Jones was never prosecuted for forcible sex on [Evans]. No, nobody from the State did a doggone thing.” Again, a bench conference ensued, and the trial judge warned that if he referenced information not in evidence one more time, she would “sit [him] down.” Defense counsel then told the jury that the “State of Mississippi” was responsible for having two victims (Evans and Glenda) where Jones “could get at them” (at Dillan’s house), and Evans was being unjustly prosecuted for incidents while living at Dillan’s home, “where the State put them.” The trial judge then instructed defense counsel to sit down. The State requested the judge instruct the jury to disregard the last statement made by defense counsel, and she complied. Defense counsel moved for a mistrial, which was denied.
¶ 25. It is elementary that trial counsel cannot inject “prejudices ... not contained in some source of the evidence” into closing argument. See Sheppard, 777 So.2d at 661 (¶ 7). Evans complained of the trial judge’s stopping her closing argument, yet neither at trial nor in her brief was there a proffer or explanation of the points which were “incomplete and untold,” and which she claimed would prejudice her to such a degree to warrant a new trial. The trial judge noted that defense counsel’s total closing-argument time was thirty minutes, and counsel was told to “sit *729 down” with approximately three minutes of time remaining. Defense counsel had numerous warnings, which he chose to disregard. We cannot say that Evans was unjustly prejudiced by the trial judge’s limiting closing argument by a few minutes. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF ACCESSORY BEFORE THE FACT TO SEXUAL BATTERY, AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The names of the victim and the victim's relatives have been changed to protect the victim’s identity.

. During this time, Evans was pregnant with Jones’s child.

.Evans had trichomonas around this time as well, when she was having sexual intercourse with Jones. It is not specified in the record whether Jones definitely had the disease, but he took Evans’s medicine to treat himself.

. On cross-examination, Investigator Davis admitted that, in the police report taken by Captain Lloyd, Gina did not mention Evans’s participating in the incidents. Instead, Gina reported to Captain Lloyd that Jones had sexual intercourse with Glenda: Jones had woken Glenda up one night, pulled her underwear down, and put his penis inside of her. Gina, however, maintained at trial that she told law enforcement Jones had oral sex with her daughter, not intercourse.

. This Court affirmed the conviction of Jones for the sexual battery of "Glenda” in August 2013. See Jones v. State,—So.3d—,— (¶ 22) (Miss.Ct.App.2013). The Mississippi Supreme Court granted a petition for a writ of certiorari to hear the case.