# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00796-SCT

*CYNTHIA M. JEFFRIES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/1997 |
| TRIAL JUDGE: | HON. SHIRLEY C. BYERS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROY D. CAMPBELL, III |
| | JOHN A. BUSSIAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | REVERSED AND RENDERED - 12/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Cynthia M. Jeffries was convicted of criminal contempt in the Circuit Court of Washington County and sentenced to seventy-two hours in the county jail. Aggrieved by the contempt conviction, Jeffries appeals.

## STATEMENT OF THE FACTS

¶2. Cynthia Jeffries is a reporter for the *Delta Democrat Times*, the local newspaper in Greenville, Mississippi. She attended an open court manslaughter sentencing hearing on June 6, 1997, for Brian Hollingsworth in the Circuit Court of Washington County. Various Hollingsworth family members and family members of the victim were also in attendance. The prosecutor discussed portions of Hollingsworth's juvenile record in an effort to persuade the judge to impose the maximum sentence for manslaughter. After the statements of counsel, Judge Shirley Byers asked Jeffries to approach the bench. Judge Byers discussed

the following with Jeffries:

> BY THE COURT: In a juvenile record, that is not to be recorded in the paper. That is a juvenile - - that is a juvenile record.

> BY MS. JEFFERS[SIC]: Okay.

> BY THE COURT: What Mr. Kilpatrick stated, you need to get those off of your notes and they are not to be published in the paper and if I find that they are published I am bringing you back to the Court and finding you in contempt of my order. That is not to be published.

> BY MS. JEFFERS[SIC]: Okay.

> BY THE COURT: Alright, the only - - there is no felony record here so there is no prior convictions.

> BY MS. JEFFRES[SIC]: Okay.

¶3. On June 11, the *Delta Democrat Times* included an article written by Jeffries which stated in pertinent part: "As a juvenile, Hollingsworth was charged with such crimes as manufacturing of marijuana, grand larceny, auto burglary, possession of alcohol and others." This article also contained a discussion of the trial court's order and its impact on Jeffries's first amendment rights.

¶4. On June 19, the circuit court issued an arrest warrant for Jeffries, and she appeared with her counsel, Mr. Campbell. The following exchange took place:

> BY THE COURT: At this time, she is in direct contempt of the direct order given to her and that she violated. The court finds Ms. Jefferies [sic] in contempt. I am sentencing you to 72 hours in the Washington County Jail from the moment you are booked. Deputy, process her in and call me back as to what time and let me know. She is to remain in jail for 72 hours from that time. The newspaper of July 11 [sic] will be admitted as an exhibit.

> MR. CAMPBELL: Just for clarification and certainly not argument with the court, am I to understand that the purpose for the finding of direct contempt is that after the order was given to her by your Honor that she then participated in that article in the newspaper?

> THE COURT: It's her byline.

> MR. CAMPBELL: Again, so the record is clear, am I correct that she was ordered not to write a story on what was said in open court that's . . .

> THE COURT: She was ordered not to report the juvenile record of Brian Hollingsworth.

## DISCUSSION

¶5. The state concedes that Jeffries's actions cannot form the basis of the direct contempt charge of which she was convicted. We agree. We have previously held, "Direct contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice." *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss.1994) (citing *Varvaris v. State*, 512 So.2d 886, 887 (Miss.1987)). We have defined constructive contempt as "any act calculated to

impede, embarrass, obstruct, defeat, or corrupt the administration of the courts of justice, when the act is done beyond the presence of the court." *Evers v. State*, 241 Miss. 560, 566, 131 So. 2d 653, 655 (1961). Direct contempt necessitates an instantaneous response. *Purvis*, 657 So. 2d at 797. "Thus, the distinction between direct and constructive contempt is important in determining the necessary procedural prerequisites to finding an individual in contempt." *Id.* Jeffries published an article mentioning Hollingsworth's juvenile record in violation of the court's order. This conduct only formed the basis of a constructive contempt violation.

¶6. The state also concedes that Jeffries was not afforded the procedural safeguards required for a charge of constructive contempt. Constructive contempt requires a specific charge, notice and a hearing. *Purvis*, 657 So. 2d at 798 (citing *Wood v. State,* 227 So.2d 288, 290 (Miss. 1969)). Therefore, the lower court must be reversed.

¶7. The state also acknowledges that the order of the circuit court is a prior restraint on speech and as such is presumptively invalid. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976). A three-part determination must be applied to overcome the presumption. *Id.* at 562. The trial judge made no determinations in an attempt to overcome this presumption. Finally, the state concedes that such an order must not necessarily be contested with an attack on the order itself but may be contested by disobedience. *In re Providence Journal Co.,* 820 F.2d 1342, 1344 (1st Cir. 1986) (stating one subject to a transparently invalid prior restraint can challenge its validity through violation of the order), cert. dism'd, sub. nom. *United States v. Providence Journal*, 485 U.S. 693 (1988). Jeffries chose to publish in violation of the order. In support of Jeffries, an amici curiae brief has been filed representing the position of the following groups: The Reporters Committee for Freedom of the Press, Society of Professional Journalists, American Society of Newspaper Editors, Mississippi Press Association, and Mississippi Association of Broadcasters, Inc. This brief illuminates what the state has already conceded. Since the court's order barring Jeffries from reporting on Hollingsworth's juvenile record is a prior restraint, it is presumptively invalid. *Nebraska Press Ass'n*, 427 U.S. at 562. To overcome this presumption, the United States Supreme Court has instructed trial courts to determine: (1) whether the publication would result in damage to a "near sacred right" (2) whether the prior restraint would be effective and (3) whether less extreme measures were available. *Providence Journal*, 820 F.2d at 1351(citing *Nebraska Press Ass'n* , 427 U.S. at 562-64).

¶8. Obedience to the lower court order would have damaged Jeffries's right to freedom of speech. The restraint might have been effective in keeping Hollingsworth's juvenile record private; however, members of the family of the victim were also in the audience. There was no duty on their part to keep the matter private and no guarantees have been made that the family has kept the record private. Less extreme measures were certainly available. For instance, the trial judge might have simply reviewed the juvenile record for herself or she may have had counsel brief it for her in writing instead of discussing it in open court. Once she made the matter public, those in attendance, including the press, had a right to further disseminate the information. Therefore, the prior restraint was an invalid interference with Jeffries's first amendment rights.

¶9. The United States Supreme Court has held that a case could conceivably arise where a prior restraint might be valid. *Near v. Minnesota*, 283 U.S. 697, 716 (1931). However, as the amicus brief notes, when information has been obtained legally from a public proceeding or document, the United States Supreme Court and appellate courts around the country have consistently rejected any restraint on its publication. This is true even when statutes prohibit dissemination of the same information when not publicly available.

*See **The Florida Star v. B.J.F.***, 491 U.S. 524 (1989)(allowing publication of name of victim of sexual offense); ***Oklahoma Publ'g Co. v. District Court***, 430 U.S. 308 (1977)(allowing publication of the lawfully obtained name and picture of a juvenile offender); ***State v. Coe***, 679 P.2d 353, 363 (Wash. 1984) (holding prior restraint on publication of tapes of open court proceedings is forbidden by the Washington Constitution); ***United States v. Salerno***, 828 F.2d 958 (2nd Cir 1987)(refusing to create an exception to the right to inspect and copy judicial records for video depositions); ***Columbia Broadcasting Sys., Inc. v. United States Dist. Court,*** 729 F.2d 1174 (9th Cir. 1983)(holding order restraining CBS from broadcasting "sting" tapes violated first amendment). The Washington Supreme Court stated:

> A trial is a public event. What transpires in the court room is public property.... Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

***Coe***, 679 P.2d at 363 (quoting ***Craig v. Harney***, 331 U.S. 367, 374 (1947)).

¶10. The Mississippi Constitution of 1890 provides safeguards similar to those provided by the federal constitution:

> The freedom of speech and of the press shall be held sacred; and in all prosecutions for libel the truth may be given in evidence, and the jury shall determine the law and the facts under the direction of the court; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted.

Miss Const. art. 3, § 13. In Mississippi courts as well as in federal courts, the protection of free speech is sacred and not to be dismissed lightly by trial judges. The lower court in this case failed to weigh the prior restraint factors set out by the United States Supreme Court.

¶11. Without this determination, we are left with a presumption of invalidity. The basis of the publication in question was an open court hearing and the information was lawfully obtained. Less extreme measures could have been implemented by the trial judge. Therefore, the conviction of criminal contempt is reversed and vacated and Ms. Jeffries is discharged.

## CONCLUSION

¶12. Jeffries argues and the state concedes that there was no basis in the trial court for a conviction of direct contempt. The lower court failed to provide the procedural safeguards attendant to a charge of constructive contempt. In addition, the order of the lower court was a prior restraint on speech and thus presumptively invalid. The lower court failed to balance the factors set out by the United States Supreme Court to determine the validity of this prior restraint. Therefore, the conviction of Cynthia M. Jeffries is reversed, her sentence vacated, and Jeffries discharged.

¶13. **REVERSED AND RENDERED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND WALLER, JJ., CONCUR.**