# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-IA-01199-SCT

*JOEL WAGNER a/k/a FRANKIE WAGNER*

*v.*

*TODD ANDREACCHIO AND RAE ANDREACCHIO*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/01/2021 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| TRIAL COURT ATTORNEYS: | CYNTHIA HEWES SPEETJENS |
| | IRA KIMBRELL RUSHING |
| | SETH MAGILL HUNTER |
| | ABBEY ADCOCK REEVES |
| | JASON HOOD STRONG |
| | JOHN CHADWICK WILLIAMS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JASON HOOD STRONG |
| | THOMAS RAY JULIAN |
| | SETH MAGILL HUNTER |
| ATTORNEYS FOR APPELLEES: | CYNTHIA HEWES SPEETJENS |
| | IRA KIMBRELL RUSHING |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND RENDERED - 05/04/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Todd and Rae Andreacchio sued Joel Wagner for intentional infliction of emotional distress, gross negligence, invasion of privacy, and civil conspiracy. The Andreacchios seek to hold Wagner liable for publishing on the internet portions of the investigative file of their

son's death. But the United States Supreme Court has held that the First Amendment protects the publication of legally obtained public records.[1] And the investigative file clearly was a public record that was furnished to Wagner by the Mississippi Attorney General's Office. Thus, Wagner's publication of portions of the file is constitutionally protected.

¶2. Because the Andreacchios based all their claims on Wagner's publication of legally obtained public information, their complaint against him fails as a matter of law. We therefore reverse the trial court's ruling denying Wagner's motion to dismiss. And we render judgment in Wagner's favor, dismissing all claims against him.

### Background Facts & Procedural History

¶3. The Andreacchios' son Christian died in 2014. The Meridian Police Department ruled his death a suicide. But the Andreacchios themselves disagreed. They have maintained the circumstances surrounding Christian's death point to homicide. Eventually, the Mississippi Bureau of Investigations stepped in to investigate. And in 2018, the Mississippi Attorney General's Office presented the matter to a grand jury, which did not find probable cause to return an indictment relating to Christian's death.

¶4. In 2016, the Andreacchios had begun requesting the investigative file. But because the investigation was ongoing, they were told the file could not be released. After the grand jury presentation, the Andreacchios asked Special Assistant Attorney General Marvin Sanders for a copy of the investigative file. According to their complaint, Sanders initially rebuffed their request, citing the policy about not releasing records of ongoing investigations.

---

[1] *The Florida Star v. B.J.F.*, 491 U.S. 524, 541, 109 S. Ct. 2603, 105 L. Ed. 2d 443 (1989).

2

Frustrated, the Andreacchios filed a request through the procedures outlined in the Mississippi Public Records Act.

¶5.     Sanders called Rae Andreacchio on July 8, 2019, and stated that he had changed his mind—the file *was* going to be released because the investigation was over. On July 17, 2019, Sanders mailed the Andreacchios a jump drive containing the investigative file, with portions redacted. That same day, Sanders also mailed jump drives to three others who had made similar public records requests.

¶6.     Wagner, a Meridian resident and uncle of Christian's girlfriend at the time of his death, had also asked Sanders for a copy of the file. According to the complaint, Sanders emailed Wagner portions of the investigative file on July 3, 2019. And Wagner began posting this information, including Christian's autopsy photos, on his website called Truth in Justice.

¶7.     The Andreacchios take issue with the fact Sanders sent Wagner the investigative file *before* Sanders announced to Rae that his office would be releasing the file. Because of this, they assert Wagner was able to publish embarrassing and upsetting information about Christian and his family, which they assert were not matters of legitimate public concern.

¶8.     Initially, the Andreacchios sued Wagner for intentional infliction of emotional distress, gross negligence, and invasion of privacy. But later they amended their complaint to add Sanders as a defendant and to add a claim of conspiracy to commit intentional infliction of emotional distress.

¶9.    Wagner responded with a motion to dismiss. In his motion, Wagner claimed the investigative file was a public record furnished to him by the Attorney General's Office. Therefore, his publication of the information was protected by the First Amendment.

¶10.    Sanders responded with a motion for judgment on the pleadings. In his motion, Sanders asserted res judicata, based on the Mississippi Ethics Commission's order that Sanders's release of the investigative file did not violate the Public Records Act.[2]

¶11.    Following a hearing, the trial court denied both motions.

¶12.    Wagner filed a petition with this Court requesting permission to file an interlocutory appeal, which this Court granted.[3]

**Discussion**

¶13.    We review the denial of a motion to dismiss de novo. *Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 650 (Miss. 2021). "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim." *Child.'s Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 933 (Miss. 2006). The allegations in the complaint must be taken as true. *Spiers*, 328 So. 3d at 650. And the motion to dismiss "should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." *Howard v. Est. of Harper ex rel. Harper*, 947 So. 2d 854, 856 (Miss. 2006).

---

[2] Sanders also asserted that he enjoyed prosecutorial immunity and that the Andreacchios failed to comply with the notice provisions of the Mississippi Tort Claims Act.

[3] Sanders did not petition for interlocutory appeal of the denial of his motion for judgment on the pleadings. So the sufficiency of the allegations against him is not before this Court.

¶14. Taking the Andreacchios' allegations against Wagner as true, we find their complaint against him fails as a matter of law. Wagner's actions are protected by the First Amendment, which protects the publication of legally obtained public records. *The Florida Star v. B.J.F.*, 491 U.S. 524, 541, 109 S. Ct. 2603, 105 L. Ed. 2d 443 (1989).

### I. The investigative file was a public record.

¶15. Each claim hinges on Wagner's publication of information on his website from the investigative file of Christian's death. The investigative file was clearly a public record when Wagner received it. The allegations in the Andreacchios' complaint—that Special Assistant Attorney General Sanders gave Wagner the investigative file—*before* Sanders responded to Andreacchios' public records requests—do not alter this truth.

¶16. The Andreacchios allege that this information was *not yet* a matter of public record because Special Assistant Attorney General Sanders had not first announced to the Andreacchios his office was releasing this information publicly. We disagree. Though investigative reports are statutorily exempt from the Public Records Act—and need not have been provided at all by the Attorney General's Office—they are still by their very nature public records. Miss. Code. Ann. § 25-61-12(2)(a) (Rev. 2018) (exempting investigative reports from the provisions of the Mississippi Public Records Act of 1983); Miss. Code. Ann. § 25-61-3(b) (Rev. 2018) (defining "public records" as "all . . . documentary materials . . . having been used, being in use, or prepared, possessed or retained for use in the conduct, transaction or performance of any business, transaction, work, duty or function of any public body"). In other words, the investigative report of Christian's death did not *become* a public

5

record when Sanders finally and fully responded to the multiple public record requests. The file intrinsically *was* a public record, just not one the Attorney General's Office was required to disclose.

### II. Wagner's receipt of the investigative file was not unlawful.

¶17. Further, Wagner's receipt of this public record was not unlawful on his part. Wagner did not hack the Attorney General's computer system. Nor is he alleged to have paid someone in the Attorney General's Office to leak him a copy. Instead, according to the complaint, Wagner engaged in discussions with Sanders, a public official, for the file. And Sanders for whatever reason decided to give it to him.

¶18. It is certainly understandable that the Andreacchios are upset that Wagner received more information more quickly than they did. But that does not mean Wagner acted unlawfully. In *The Florida Star*, the United States Supreme Court rejected the same argument made here—that certain information in a police report was unlawfully obtained because that information was statutorily protected from public disclosure. *The Florida Star*, 491 U.S. at 536. As the Supreme Court held, "the fact that state officials are not required to disclose such reports does not make it unlawful for a newspaper to receive them *when furnished by the government*." *Id.* (emphasis added). "Nor does the fact that the [government] apparently failed to fulfill its obligation . . . make the newspaper's ensuing receipt of this information unlawful." *Id.*

¶19. Here, the complaint alleged Wagner received the investigative file from Sanders, a special assistant attorney general authorized to furnish the information. While it seems

6

unusual for a prosecutor to disclose investigative reports to Wagner, the complaint, taken as true, fails to allege any unlawful activity on Wagner's part. *Id.*; *see also* **Cox Broad. Corp. v. Cohn**, 420 U.S. 469, 496, 95 S. Ct. 1029, 1047, 43 L. Ed. 2d 328 (1975) (holding that press cannot be sanctioned for disclosing information that a government institution has decided to publish).

¶20.    Neither does the assertion that Wagner failed to comply with a statutory public records request allege *illegal* activity. The Public Records Act ensures citizens the right to public records. Miss. Code Ann. § 25-61-2. But it does not follow that a request for a public record that does not fully comply with the Public Records Act is an illegal act. Such an interpretation would not only violate the express policy of the Public Records Act, which is to ensure access to public records, and not to limit it, but it would also run afoul of the First Amendment. *Id.*; *see, e.g.*, **Branzburg v. Hayes**, 408 U.S. 665, 681, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) (acknowledging that news gathering is protected by the First Amendment).

**Conclusion**

¶21.    Because the Andreacchios' complaint against Wagner hinges on public information he obtained legally, it fails as a matter of law. *Cf.* **Andreacchio v. Hamilton**, No. M2021-01021-COA-R3-CV, 2022 WL 2718659, at *1 (Tenn. Ct. App. July 13, 2022) (holding that the Andreacchios' similar claims in Tennessee against Joseph Hamilton, which were based on his publishing Christian's autopsy photos, failed as a matter of law because "the information [Hamilton wa]s alleged to have shared is truthful information, public records,

7

concerning a matter of public significance"). Therefore, we reverse the trial court's denial of Wagner's motion to dismiss and render judgment in Wagner's favor.

¶22. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶23. The majority concludes that "[b]ecause the Andreacchios' complaint against Wagner hinges on public information he obtained legally, it fails as a matter of law." Maj. Op. ¶ 21. But whether Wagner lawfully obtained the investigative file is not something we can determine at this time from the record before us. As a result, I find the trial court's denial of the motion for summary judgment was proper and should be affirmed.

¶24. Todd and Rae Andreacchio assert that Joel Wagner did not lawfully obtain the investigative file from the Attorney General's Office (AGO). According to the Andreacchios, "[t]here is no evidence that [Wagner] had paid the requisite fee for this very private information or that any of the procedural requirements had been met prior to the release of the jump drive to him." The Andreacchios argue that because "[t]he matters disclosed by Wagner were not obtained legally or lawfully," Wagner is not protected by the First Amendment.

¶25. "When considering a motion to dismiss for the failure to state a claim upon which relief can be granted, we are limited to review of the contents of the complaint, and '[t]he allegations in the complaint must be taken as true.'" *Spiers v. Oak Grove Credit, LLC*, 328

8

So. 3d 645, 651 (Miss. 2021) (alteration in original) (quoting ***Crum v. City of Corinth***, 183 So. 3d 847, 851 (Miss. 2016)). "A motion to dismiss under [Mississippi Rule of Civil Procedure 12(b)(6)] should not be granted unless, taking the factual allegations of the complaint as true, 'it appears beyond any reasonable doubt that the non movant can prove no set of facts in support of the claim which would entitle them to relief.'" ***Id.*** at 652 (quoting ***Bowden v. Young***, 120 So. 3d 971, 975 (Miss. 2013)).

¶26.    In ***Jeffries v. State***, Jeffries, a reporter for the Delta Democrat-Times, published an article that discussed a juvenile defendant's criminal record after learning the information in open court at a sentencing hearing. ***Jeffries v. State***, 724 So. 2d 897, 898 (Miss. 1998). Jeffries had been specifically ordered by the trial court not to include the information in the paper because the information involved a juvenile. ***Id.***  Jeffries was convicted of criminal contempt for publishing the article in violation of the trial court's order. ***Id.***

¶27.    On appeal, this Court found that the trial court's order was an unlawful prior restraint on speech and was presumptively invalid, stating,

> Once [the trial judge] made the matter public, those in attendance, including the press, had a right to further disseminate the information. Therefore, the prior restraint was an invalid interference with Jeffries's first amendment rights.
>
> . . . *[W]hen information has been obtained legally* from a public proceeding or document, the United States Supreme Court and appellate courts around the country have consistently rejected any restraint on its publication. This is true even when statutes prohibit dissemination of the same information when not publicly available.

***Id.*** at 899-900 (emphasis added) (citations omitted).

¶28. Here, the record does not include what steps, if any, Wagner took to obtain the investigative file, nor does it include whether Wagner followed the proper procedures in order to obtain the file. Assuming the Andreacchios' allegations are true, as we must do under a Rule 12(b)(6) review, *Spiers*, 328 So. 3d at 651 (quoting *Crum*, 183 So. 3d at 851), and the information was not legally obtained, then Wagner's argument fails. *Jeffries*, 724 So. 2d at 899-900. In other words, if the file was not lawfully obtained by Wagner, then a question remains as to whether Wagner can be sanctioned for sharing the illegally obtained file with the public. As a result, this Court finds the trial court properly denied the motion to dismiss because it is unclear at this time whether Wagner lawfully obtained the investigative file from the AGO.

¶29. In support, the majority cites *Andreacchio v. Hamilton*, No. M2021-01021-COA-R3-CV, 2022 WL 2718659, at *1 (Tenn. Ct. App. July 13, 2022). There, the Tennessee court found as follows:

> As Plaintiffs themselves acknowledged, the investigation into Christian Andreacchio's death is a matter of public concern. Indeed, whether the official investigation into Christian Andreacchio's death was mishandled, as Plaintiffs have argued, is a matter of public significance. Plaintiffs have publicly expressed their views on the matter, as is their right. Defendant has publicly expressed a contrary view, as is his right. This is the sort of "free communication of thoughts and opinions" protected by Article 1, Section 19 of the Tennessee Constitution. It was within this context that Defendant is alleged to have distributed Christian Andreacchio's autopsy photographs online. *There is no hint in the record that Defendant obtained these photographs by unlawful means.* On the contrary, they were public records obtained through the Mississippi Attorney General's Office. Further, there is no suggestion that the photographs were altered or manipulated in any way. Defendant thus is alleged to have disseminated truthful information—public records from a sister state, no less—concerning a matter of public significance.

10

Without more, this activity cannot be deemed "outrageous" in the legal sense. Rather, it is free expression.

*Id.* at *7 (footnote omitted) (emphasis added).

¶30. But *Hamilton* is distinguishable. Here, unlike in *Hamilton*, the Andreacchios have asserted in the record that Wagner obtained the information by unlawful means. *Id.* If the file was not lawfully obtained by Wagner, then a question remains as to whether Wagner can be sanctioned for sharing the illegally obtained file with the public. *See Jeffries*, 724 So. 2d at 900 (emphasis added) ("*[W]hen information has been obtained legally* from a public proceeding or document, the United States Supreme Court and appellate courts around the country have consistently rejected any restraint on its publication.").

¶31. "[T]aking the factual allegations of the complaint as true, 'it [does not] appear[] beyond any reasonable doubt that [the Andreacchios] can prove no set of facts in support of the claim which would entitle them to relief.'" *Spiers*, 328 So. 3d at 652 (internal quotation mark omitted) (quoting *Bowden*, 120 So. 3d at 975). Consequently, Wagner's motion to dismiss under Rule 12(b)(6) was properly denied. The trial court's order denying Wagner's motion to dismiss should be affirmed.